[No. B019034. Second Dist., Div. Five. Nov. 14, 1986.]

ZANE K. LEETH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
LEASCO SPECIALTIES et al., Respondents.

1552

COUNSEL

Cohen & Steinbrecher and Mitchell A. Garrett for Petitioner.

Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva and Louis Harris for Respondents.

## OPINION

**EAGLESON, J.—** In this proceeding we consider whether the Workers' Compensation Appeals Board (Board) properly concluded that subdivision (c)(2) of Labor Code section 4453 should be applied to determine the average weekly earnings of a worker who was injured in the lower-paying of two employments.[1] Because we conclude that the Board's determination was correct, we affirm the Board's decision.

### FACTS

On May 19, 1984, applicant, Zane Leeth, sustained an admitted industrial injury to his knee while working as a relief assistant trailer park manager for respondent Leasco Specialties. Applicant resided at the trailer park. His industrial injury caused temporary total disability from May 20, 1984, through August 10, 1984, as well as permanent partial disability.

Applicant was employed by Leasco two weekends each month at a monthly wage of $75. His duties involved unlocking and locking the clubhouse doors, swimming pool gate, and pump room door, checking the chemical balance of the pool, and answering the office telephone approximately three hours a day. He was on call 24 hours a day each weekend that he worked for Leasco. When injured, applicant also had a full-time job with another employer. In his full-time employment, he was paid $8.50 per hour for 40 hours of work a week. A dispute arose as to the proper method for determining applicant's average weekly earnings, upon which awards of temporary and permanent disability indemnity would be based. (See §§ 4453, 4653, 4658.)[2]

---

[1]Unless otherwise specified, all section references herein are to the Labor Code, and all subdivision references are to section 4453, as amended and internally redesignated in 1982. Prior codifications of subdivisions (c)(1) through (c)(4)—formerly subdivisions (a) through (d)—are referred to by their current designations.

[2]Sections 4653 and 4658 prescribe indemnity for temporary total disability and permanent disability at weekly rates of two-thirds of the worker's average weekly earnings. Section 4453 provides: "(a) Except as provided in Section 4453.1, in computing average annual earnings for the purposes of temporary disability indemnity and permanent total disability indemnity only, the average weekly earnings shall be taken at: [¶] (1) Not less than one hundred twenty-six dollars ($126) nor more than two hundred ninety-four dollars ($294), for injuries occurring on and after January 1, 1983. [¶] (2) Not less than one hundred sixty-eight dollars ($168) nor more than three hundred thirty-six dollars ($336), for injuries occurring on and after January 1, 1984. [¶] (b) In computing average annual earnings for purposes of permanent partial disability indemnity, except as provided in Section 4659, the average weekly earnings shall be taken at: [¶] (1) Not less than seventy-five dollars ($75) nor more than one hundred ninety-five dollars ($195), for injuries occurring on and after January 1, 1983. [¶] (2) Not less than one hundred five dollars ($105) nor more than two hundred ten dollars ($210), for injuries occurring on and after January 1, 1984. [¶] (c) Between the limits specified in subdivisions (a) and (b), the average weekly earnings, except as provided in Sections 4456 to 4459, shall be arrived at as follows: [¶] (1) Where the

Leasco's insurer contended that the appropriate formula was specified by subdivision (c)(2), which provides that the average weekly earnings of an applicant with two or more employments shall be taken as 100 percent of weekly earnings from all employments, and that "the earnings from employments other than the employment in which the injury occurred shall not be taken at a higher rate than the hourly rate paid at the time of the injury." The insurer also contended that since applicant was on call 24 hours a day each weekend that he worked at Leasco, the hourly rate of that employment was $0.78 and that applicant's entitlement to temporary and permanent disability indemnity was at the minimum statutory rates. (§§ 4453, 4653, 4658.)

Applicant, on the other hand, urged that subdivision (c)(2) could not reasonably and fairly be applied under these circumstances. Accordingly, he argued, subdivision (c)(4) should apply, under which his average weekly earnings would be his average weekly earning capacity, arrived at with "due consideration being given to his . . . actual earnings from all sources and employments." (*Ibid.*)

The workers' compensation judge (WCJ) found that applicant's average weekly earnings were $357.31 and awarded disability indemnity at maximum rates. In his opinion on decision, he concluded that subdivision (c)(4) should apply because "it is not reasonable or fair to assume by way of a calculation that applicant worked at an actual hourly rate of 87 [*sic*] cents per hour at the time of his injury."

The insurer petitioned the Board for reconsideration, contending that average weekly earnings should be calculated pursuant to subdivision (c)(2) and that "[t]o follow the [WCJ's] reasoning . . . effectively makes Labor Code Section 4453 [, subdivision] (c)(2) a nullity."

---

employment is for 30 or more hours a week and for five or more working days a week, the average weekly earnings shall be 100 percent of the number of working days a week times the daily earnings at the time of the injury. [¶] (2) Where the employee is working for two or more employers at or about the time of the injury, the average weekly earnings shall be taken as 100 percent of the aggregate of such earnings from all employments computed in terms of one week; but the earnings from employments other than the employment in which the injury occurred shall not be taken at a higher rate than the hourly rate paid at the time of the injury. [¶] (3) If the earnings are at an irregular rate, such as piecework, or on a commission basis, or are specified to be by week, month, or other period, then the average weekly earnings mentioned in subdivision (a) shall be taken as 100 percent of the actual weekly earnings averaged for such period of time, not exceeding one year, as may conveniently be taken to determine an average weekly rate of pay. [¶] (4) Where the employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his or her injury, due consideration being given to his or her actual earnings from all sources and employments."

The Board in a two-to-one decision granted reconsideration and applied subdivision (c)(2). The dissenting member of the panel stated that he would have denied reconsideration for the reasons contained in the WCJ's report and recommendation on the petition for reconsideration wherein the WCJ had essentially restated the rationale of his opinion on decision.

Applicant petitioned for reconsideration, contending that subdivision (c)(4) should have been used since applicant was not paid at an hourly rate in the weekend employment and since his actual weekly earnings were $357.31. Although he contended that the Board erred in considering the weekend employment as employment of 24 hours per day for purposes of the subdivision (c)(2) calculation, he did not assert that a lesser number of hours per day should be attributed to that employment under subdivision (c)(2), but rather relied wholly on subdivision (c)(4).

The Board unanimously denied applicant's petition for reconsideration. It concluded that adoption of applicant's position would require application of subdivision (c)(4) whenever a worker was injured in the course of the lower-paying of two or more employments, which would render subdivision (c)(2) meaningless.[3]

### ISSUE

The sole issue raised in applicant's petition for review is whether the Board properly used subdivision (c)(2) rather than subdivision (c)(4) in calculating average weekly earnings.[4]

### DISCUSSION

The parties have not directed our attention to any Supreme Court or Court of Appeal opinion discussing subdivision (c)(4) as a possible exception to subdivision (c)(2). ■ ■ ■ ■ That issue was involved in two cases of which we are aware in which the Court of Appeal summarily denied review (*Argonaut Ins. Co. v. Workmen's Comp. Appeals Bd.* (1967) 32

---

[3]The Board also declared that workers' compensation insurance premiums are based on insurers' expectations that temporary disability indemnity for part-time employees will reflect their part-time status. It is unnecessary to consider whether the Board was correct in this premise as we uphold the Board's decision on other grounds.

[4]Although applicant again asserts that the Board erred in considering the weekend employment as employment of 24 hours per day for purposes of the subdivision (c)(2) calculation, he does not contend that a lesser number of hours per day should be attributed to that employment under subdivision (c)(2), but rather contends solely that subdivision (c)(4) should have been used because subdivision (c)(2) cannot be fairly or reasonably applied in the present case. We therefore need not and do not determine whether the weekend employment was employment of 24 hours per day due to its on-call nature.

Cal.Comp.Cases 75 [Board computed average weekly earnings of regularly employed ranch foreman injured while performing volunteer carpentry services at church by determining earning capacity (subd. (c)(4))]; *Gunn v. Indus. Acc. Com.* (1959) 24 Cal.Comp.Cases 138 [applicant who had full-time employment at $2.62 per hour and part-time employment at $0.55 per hour was injured in part-time employment; Commission applied subd. (c)(2)]).[5]

██ In determining whether the Board correctly decided that subdivision (c)(2) should be applied, we are mindful that "a statute should not be given a construction that results in rendering one of its provisions nugatory. [Citations.]" (*People v. Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585].) Thus, "'[i]t is a cardinal rule of statutory construction that in attempting to ascertain the legislative intention effect should be given, whenever possible, to the statute as a whole and to every word and clause thereof, leaving no part of the provision useless or deprived of meaning.' [Citations.]" (*Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 478 [156 Cal.Rptr. 14, 595 P.2d 592].) In short, "a statute should be construed so that effect is given to all its provisions, leaving no part superfluous or inoperative, void or insignificant and so that one section will not destroy another. [Citation.]" (*Stewart v. Board of Medical Quality Assurance* (1978) 80 Cal.App.3d 172, 179 [143 Cal.Rptr. 641]; also see *Landrum v. Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352]; *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *REA Enterprises v. California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 610 [125 Cal.Rptr. 201].)

██ These principles require that meaning be given both to subdivision (c)(2) and subdivision (c)(4). The language of subdivision (c)(2) is explicit and direct: "Where the employee is working for two or more employers at or about the time of the injury, the average weekly earnings shall be taken as 100 percent of the aggregate of such earnings from all employments computed in terms of one week; but the earnings from employments other than the employment in which the injury occurred shall not be taken at a higher rate than the hourly rate paid at the time of the injury." As the Board observed, to require calculation of average weekly earnings under subdivision (c)(4) whenever application of subdivision (c)(2) would result in minimal rates of disability indemnity for a worker who is injured in low-

---

[5]We note that the decisions of the Board and Industrial Accident Commission (Commission) are not binding on this court and that the denial of review by the appellate courts in *Argonaut* and *Gunn* did not necessarily indicate the courts' agreement with the decisions of the Board and Commission on the issues presented. (*Thrifty Drug Stores, Inc. v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 937, 941, fn. 3 [157 Cal.Rptr. 459].)

paying part-time employment and who has much higher paying full-time employment would nullify subdivision (c)(2). ■ Our conclusion in this regard is in accordance with "the well-established principle that contemporaneous administrative construction of a statute by the agency charged with its enforcement and interpretation, while not necessarily controlling, is of great weight; and courts will not depart from such construction unless it is clearly erroneous or unauthorized. [Citations.]" (*Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 638 [211 Cal.Rptr. 683].)

■ Although we conclude that subdivision (c)(4) does not apply in a dual or multiple employment situation simply because determination of average weekly earnings under subdivision (c)(2) would reduce an applicant's rate of disability from the statutory maximum to the statutory minimum, we note that there will be situations in which subdivision (c)(4) should be applied when a worker with two or more jobs is injured in lesser-paying part-time employment. ■ Cases in which subdivision (c)(4) was held to be the appropriate subdivision in single employment situations are illustrative. For example, the courts have concluded that subdivision (c)(4)'s provisions regarding earning capacity should be used to calculate average weekly earnings when an applicant received or was scheduled or likely to receive a higher salary after the date of injury. (*Thrifty Drug Stores, Inc.* v. *Workers' Comp. Appeals Bd., supra,* 95 Cal.App.3d at p. 944 [specific, demonstrable evidence that applicant would have received increased earnings but for injury]; *Lujan* v. *Workers' Comp. Appeals Bd.* (1985) 175 Cal.App.3d 212, 214-217 [220 Cal.Rptr. 561] [increased earnings after date of injury]; *Pascoe* v. *Workmen's Comp. Appeals Bd.* (1975) 46 Cal.App.3d 146, 152-155 [120 Cal.Rptr. 199] [applicant obtained nursing license after date of injury; employer had previously offered to increase her salary once she received license]; cf. *Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 897-898 [83 Cal.Rptr. 591, 464 P.2d 47] [parent injured in seasonal part-time employment reentered full-time work force and obtained permanent full-time employment after injury], citing *Esparza* v. *Regents of the University of California* (1966) 31 Cal.Comp.Cases 433 [student injured in part-time employment who would have received master's degree later in year].)

In the present case applicant introduced no evidence that his earnings in part-time employment would probably have increased but for the injury. He thus failed to meet his burden of proving that subdivision (c)(2) could not fairly and reasonably be applied. (Subd. (c)(4); § 3202.5; see *Rogers* v. *Workers' Comp. Appeals Bd.* (1985) 172 Cal.App.3d 1195, 1199, 1202 [218 Cal.Rptr. 662] [statutory rule of liberal construction (§ 3202) does not assist applicant in meeting burden of proof]; *Thrifty Drug Stores, Inc.* v. *Workers' Comp. Appeals Bd., supra,* 95 Cal.App.3d at p. 944.)

## DISPOSITION

The Board's January 7, 1986, order denying reconsideration of its October 16, 1985, decision after reconsideration is affirmed.

Feinerman, P. J., and Hastings, J., concurred.