[No. B148291. Second Dist., Div. Two. Jan. 28, 2002.]

RONALD CROWELL, Plaintiff and Appellant, v.
DOWNEY COMMUNITY HOSPITAL FOUNDATION, Defendant and
Respondent.

## COUNSEL

The Ford Law Firm, William H. Ford III and Paul C. Cook for Plaintiff and Appellant.

Dewey Ballantine, Jeffrey R. Witham, Matthew M. Walsh and Karen H. Shelton for Defendant and Respondent.

## OPINION

**DOI TODD, J.**—This appeal presents an important question of first impression: Can parties to an arbitration agreement validly agree that an arbitration award is subject to judicial review to determine whether the award is supported by law and substantial evidence? We hold that parties cannot expand the jurisdiction of the court to review arbitration awards beyond that provided by statute and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Ronald Crowell, M.D., a professional corporation, appeals from a judgment of dismissal pursuant to an order granting defendant Downey Community Hospital Foundation's (DCHF) general demurrer without leave to amend his complaint. The complaint sought a declaration of rights as to the enforceability of an arbitration provision which explicitly required that (1) the arbitrator make findings of fact and conclusions of law, (2) the award be supported by law and substantial evidence, and (3) the merits of the award be subject to court review.

Crowell and DCHF entered into an "Agreement to Provide Hospital Emergency Department Services" effective January 1, 1996 through December 31, 1997. The agreement required arbitration of certain disputes in accordance with the provisions of the California Arbitration Act (Act),[1] except that the arbitrator was required to prepare written findings of fact and conclusions of law which "shall be supported by law and substantial evidence." The parties agreed that the decision of the arbitrator was to be final and binding except that "upon the petition of any party to the arbitration, a court shall have the authority to review the transcript of the arbitration proceedings and the arbitrator's award and shall have the authority to vacate

---

[1]The Act has been adopted as Code of Civil Procedure section 1280 et seq. All subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

the arbitrator's award, in whole or in part, on the basis that the award is not supported by substantial evidence or is based upon an error of law . . . ."[2]

In March 1998, DCHF notified Crowell to cease operations. Crowell demanded arbitration pursuant to the agreement. Although contending the agreement had expired, DCHF nonetheless expressly agreed in writing "to arbitrate the disputes identified in [Crowell's letters demanding arbitration] under the terms specified in the expired agreement."

The arbitration was not immediately initiated. Instead, after an unexplained lapse of more than two years, Crowell filed a complaint for declaratory relief seeking a judicial determination that the arbitration agreement was "valid and enforceable" and that the parties were "obligated, forthwith, to arbitrate in accordance with their agreement."

DCHF demurred to the complaint on the grounds that the arbitration agreement was "void and unenforceable as a matter of law" and because declaratory relief was "not necessary or proper under all the circumstances

---

[2]The arbitration provision states: "7.11 . . . Any dispute between Hospital and Contractor concerning the standards of medical practice or qualifications of any Contractor Physician or of Contractor shall be referred to the Medical Staff Executive Committee for review and determination by that Committee, whose decision concerning such dispute shall be final and binding upon both the Hospital and the Contractor. Any dispute between Hospital and a Contractor Physician resulting from any action taken by the Hospital concerning a Contractor Physician's Medical Staff membership and/or clinical privileges at the Hospital shall be resolved as set forth in the Hospital's Medical Staff Bylaws. [¶] Hospital and Contractor agree that if any dispute of any other nature whatsoever arises between Hospital and Contractor concerning their respective performance or observance of any of the terms and conditions of this Agreement and such dispute cannot be resolved by mutual agreement, such dispute shall be submitted by Contractor or Hospital to binding arbitration by an arbitrator mutually agreed upon in writing between Contractor and Hospital within forty-five (45) days of the Hospital's or Contractor's receipt, as the case may be, from the other of a written demand for such arbitration. [¶] The arbitrations shall proceed in accordance with and be subject to the provision of Title 9 of Part III of the California Code of Civil Procedure (commencing at Section 1280) (the 'arbitration statute'), or any successor statute, and in accordance with the following additional provision: [¶] (1) the arbitration proceedings shall be transcribed and the arbitrator's award shall be in writing, shall include a statement of the arbitrator's findings of fact and conclusions of law with respect to each claim decided, and shall be supported by law and substantial evidence; [¶] (2) the award of the arbitrator may be for an award of money and/or for specific performance and shall be final, binding and enforceable upon both Hospital and Contractor as provided in the arbitration statute, except that upon the petition of any party to the arbitration, a court shall have the authority to review the transcript of the arbitration proceedings and the arbitrator's award and shall have the authority to vacate the arbitrator's award, in whole or in part, on the basis that the award is not supported by substantial evidence or is based upon an error of law; [¶] (3) the prevailing party shall be entitled to an award of reasonable costs and attorney fees incurred in addition to any other relief awarded; and [¶] (4) the venue for the arbitration proceedings shall be the City of Downey, California."

pursuant to [section] 1061." It argued that judicial review of private arbitration awards was limited to cases where statutory grounds existed to vacate or correct the award and that declaratory relief was unnecessary "to enforce an illegal contract."

The trial court sustained the demurrer without leave to amend, issuing the following minute order: "Defendant contends that the parties agreed to do something that does not exist, conduct a Code of Civil Procedure Section 1280 et seq. arbitration with a guaranteed right of judicial review of the merits, making the arbitration clause at issue unenforceable. The relief requested by Plaintiff is neither 'necessary nor proper' under Code of Civil Procedure 1061."

Judgment of dismissal of the complaint was subsequently entered and a timely notice of appeal from that judgment filed.

CONTENTIONS

Appellant contends that binding arbitration is essentially a matter of contract between the parties, and that while sections 1286.2 and 1286.6 specify grounds on which a court may vacate or correct an arbitration award, these are merely default provisions which control when the parties do not agree otherwise. Respondent contends that the arbitration agreement is void and unenforceable as a matter of law because jurisdiction to review arbitration awards is conferred by the Act, which provides the exclusive grounds on which courts are authorized to vacate or correct an award, and the parties cannot broaden review by agreement. Both parties find support for their claims in the Supreme Court's decision in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*).

DISCUSSION

A. *The Agreement Provided for Court Review of the Arbitration Award on the Merits.*

■   Private arbitration is a matter of agreement between the parties and is governed by contract law. (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307 [24 Cal.Rptr.2d 597, 862 P.2d 158].) Arbitration agreements are to be construed like other contracts to give effect to the intention of the parties. (*Straus v. North Hollywood Hosp., Inc.* (1957) 150 Cal.App.2d 306, 310 [309 P.2d 541].) "In cases involving private arbitration, '[t]he scope of arbitration is . . . a matter of agreement between the parties.' [Citation.]" (*Moncharsh, supra,* 3 Cal.4th at p. 8.)

Here, there is no dispute that the parties agreed to an arbitration process that required findings of fact and conclusions of law and purported to authorize judicial review on the merits.

B. *The Parties Cannot Expand the Trial Court's Jurisdiction to Review Arbitration Awards by Agreement.*

■ Because the parties clearly agreed to the arbitration provision here, the issue we must decide is a narrow one: Can the parties expand the scope of judicial review of an arbitration award by agreement? We have found no California case deciding this issue, but there is substantial support in the Act and in cases interpreting the Act that they cannot.

*Moncharsh*

The Supreme Court's most expansive discussion of the scope of judicial review of arbitration awards is contained in *Moncharsh*. Although it does not specifically deal with an arbitration provision allowing judicial review of the merits of an award, *Moncharsh* provides guidance in resolving this issue.

In *Moncharsh*, Moncharsh, an attorney, was hired by a law firm and signed an employment agreement that provided for the allocation of legal fees in the event he left the firm. The agreement contained an arbitration clause that provided: "Any dispute arising out of this Agreement shall be subject to arbitration under the rules of the American Arbitration Association. No arbitrator shall have any power to alter, amend, modify or change the terms of this agreement. The decision of the arbitrator shall be final and binding on FIRM and EMPLOYEE-ATTORNEY." (*Moncharsh, supra,* 3 Cal.4th at p. 7, fn. 1.) Moncharsh subsequently left the firm, and a dispute arose as to the allocation of fees he received from former firm clients who left the firm with him. The parties invoked the arbitration provision and submitted the matter to an arbitrator, who ruled in the firm's favor, stating his conclusions in the award.

Moncharsh petitioned the superior court to vacate the award, and the law firm petitioned to confirm it. The superior court ruled that " '[t]he arbitrator's findings on questions of both law and fact are conclusive. A court cannot set aside an arbitrator's error of law no matter how egregious.' " (*Moncharsh, supra,* 3 Cal.4th at p. 8.) While the court acknowledged an exception for error appearing on the face of the award, it found no such error. (*Ibid.*) The Court of Appeal affirmed.

The Supreme Court recognized that the Act "represents a comprehensive statutory scheme regulating private arbitration in this state. [Citation.]"

(*Moncharsh, supra,* 3 Cal.4th at p. 9.) " 'The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' [Citation.]" (*Ibid.*) "Expanding the availability of judicial review of such decisions 'would tend to deprive the parties of the arbitration agreement of the very advantages the process is intended to produce.' [Citations.] [¶] Ensuring arbitral finality thus requires that judicial intervention in the arbitration process be minimized." (*Id.* at p. 10.)

The court expressed a strong concern that judicial intervention in the arbitral process be minimized to ensure that the benefits of arbitration were not lost. It surveyed nearly 150 years of the legal history of arbitration in California. It observed that "because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.' [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.]" (*Moncharsh, supra,* 3 Cal.4th at p. 11.)

The court noted that at early common law, in the absence of statutes, courts sitting as courts of equity would set aside arbitration awards for mistakes of fact or law. After adoption of the first statute, in 1851 which did not permit review, the courts "concluded the grounds for vacating an award were exclusively those set forth by statute" with a narrow exception for errors " 'spread upon the record' " affecting a " 'palpable and material point.' " (*Moncharsh, supra,* 3 Cal.4th at pp. 16-18.)

The 1927 amendments to the Act provided several additional grounds for vacating an arbitrator's award. (*Moncharsh, supra,* 3 Cal.4th at p. 21.) The cases after the amendments continued to hold that "The merits of the controversy between the parties are not subject to judicial review." (*Pacific Vegetable Oil Corp. v. C. S. T., Ltd.* (1946) 29 Cal.2d 228, 233 [174 P.2d 441].) In *Crofoot v. Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 181 [260 P.2d 156], the court concluded that after the 1927 amendments to the Act, written agreements to arbitrate were governed exclusively by statute and there was "no field for a common law arbitration to operate." (*Ibid.*) After noting differences between common law and statutory arbitration, *Crowfoot* concluded that "by the adoption of the 1927 statute, the Legislature intended to adopt a comprehensive all-inclusive statutory scheme applicable to all written agreements to arbitrate, and that in such cases the doctrines applicable to a common law arbitration were abolished." (*Id.* at p. 182.)

*Moncharsh* concluded that the statutory bases for vacating and correcting arbitration awards are exclusive. Permitting parties to expand that review by agreement would undermine the benefits of arbitration and the goals of the Act to reduce expense and delay in resolving disputes. The Act clearly "limit[s] judicial review of private arbitration awards to those cases in which there exists a statutory ground to vacate or correct the award." (*Moncharsh, supra,* 3 Cal.4th at pp. 27-28.)

### The California Arbitration Act

The Act also suggests that limitation on judicial review was intended by the Legislature. Sections 1286.2 and 1286.6 set forth grounds for vacating and correcting arbitration awards. Former section 1286.2 provided: "Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: [¶] (a) The award was procured by corruption, fraud or other undue means. [¶] (b) There was corruption in any of the arbitrators. [¶] (c) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (e) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefore or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶] (f) An arbitrator making the award was subject to disqualification upon grounds specified in Section 1281.9 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." (Stats. 1997, ch. 445, § 4 [amendments to § 1286.2 were enacted in 2001 which do not bear on our discussion].)

Section 1286.6 provides that the court shall correct an award if it determines: "(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

None of the grounds for vacating or correcting an award suggests that a court can review the merits of an award for errors of law or lack of adequate supporting evidence.

There is further evidence the Legislature did not intend that an arbitration award could be reviewed on its merits, even by the parties' agreement.

Section 1296, under title 9.2, headed "Public Construction Contract Arbitration," provides: "The parties to a construction contract with a public agency may expressly agree in writing that in any arbitration to resolve a dispute relating to the contract, the arbitrator's award shall be supported by law and substantial evidence. If the agreement so provides, a court shall, subject to Section 1286.4, vacate the award if after review of the award it determines either that the award is not supported by substantial evidence or that it is based on an error of law." Here, the Legislature specifically authorized the parties to agree to a review of the merits of a construction contract arbitration. No such review is authorized for other forms of arbitration in the Act. This suggests the legislative intent that parties cannot agree to a review on the merits. If that were not the case section 1296 would be superfluous. (See *Leeth v. Workers' Comp. Appeals Bd.* (1986) 186 Cal.App.3d 1550, 1556 [231 Cal.Rptr. 468] [" 'a statute should be construed so that effect is given to all its provisions, leaving no part superfluous or inoperative, void or insignificant' "].)

Furthermore, with respect to the scope of the arbitration and the procedures applicable to the actual arbitration, the Legislature has explicitly provided that the parties can agree for themselves on the powers of arbitrators (§ 1282), the conduct of arbitration proceedings (§ 1282.2), discovery (§ 1283.1, subd. (b)), and time for making an award (§ 1283.8).

The statutory grounds to vacate a private arbitration award under the Uniform Arbitration Act, which has not been adopted in California, are similar to those contained in section 1286.2. Most states considering the Uniform Arbitration Act have concluded that the specified grounds for vacating an award are exclusive. (*Moncharsh, supra,* 3 Cal.4th at p. 26.)

Appellant invites us to consider *Lapine Technology Corp. v. Kyocera Corp.* (9th Cir. 1997) 130 F.3d 884, a Ninth Circuit Court of Appeals case he argues is directly on point. We decline to do so. *Lapine* was decided by a sharply divided panel of the Ninth Circuit under the Federal Arbitration Act (FAA), which allows broader judicial review of arbitration awards than the Act. Under the FAA, a federal court may vacate or modify an award if it is " 'completely irrational,' " exhibits " 'manifest disregard of law,' " or otherwise fits within other grounds set forth in title 9 of the United States Code. (*Lapine, supra,* 130 F.3d at p. 888.) Moreover, there is disagreement among the federal circuits as to whether parties can agree to a review of arbitration awards on the merits. (Favoring such review: *Lapine, supra,* 130 F.3d 884; *Gateway Technologies v. MCI Telecommunications Corp.* (5th Cir. 1995) 64 F.3d 993, 996, 997; disfavoring such review: *UHC Management Co. v.*

*Computer Sciences Corp.* (8th Cir. 1998) 148 F.3d 992; *Bowen v. Amoco Pipeline Co.* (10th Cir. 2001) 254 F.3d 925, 934 ["Although the [Supreme] Court has emphasized parties may 'specify by contract the rules under which . . . arbitration will be conducted,' [citation], it has never said parties are free to interfere with the judicial process."]; see also *Chicago Typographical Union v. Chicago Sun-Times* (7th Cir. 1991) 935 F.2d 1501, 1505 ["[i]f the parties want, they can contract for an appellate arbitration panel to review the arbitrator's award. But they cannot contract for *judicial* review of that award; federal jurisdiction cannot be created by contract"].)

*Old Republic Ins. Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 45 Cal.App.4th 631 [53 Cal.Rptr.2d 50] is instructive on the question of parties' ability to expand the jurisdiction of the trial court to review arbitration awards. There, two insurance companies agreed to arbitrate a controversy. The agreement required the arbitrator to enter findings of fact and conclusions of law, review of which was to be governed by the provisions of the Act relating to review of vacating awards. The agreement further provided that the award would be treated as a judgment of the superior court for all purposes and the party against whom the judgment was rendered could seek review of the findings of fact and conclusions of law. In other words, the trial court could review the award on statutory grounds but the appellate court could review its merits.

Citing *Moncharsh*, the court in *Old Republic* refused to provide the review to which the parties had agreed. "Since one of the reasons for this rule is that 'it vindicates the intentions of the parties' [citation], the issue arises whether a contrary intention of the parties, as expressed in the stipulation herein, overrides the general rule." (*Old Republic Ins. Co. v. St. Paul Fire & Marine Ins. Co., supra,* 45 Cal.App.4th at p. 636.) The court commented that "[t]here is . . . nothing which precludes parties to a contractual arbitration from agreeing that the arbitration may be governed by any rules they see fit." (*Id.* at p. 637.) But it concluded that "[t]he parties cannot by their stipulation confer jurisdiction upon this court where none exists." (*Id.* at p. 639.)

Because the Legislature clearly set forth the trial court's jurisdiction to review arbitration awards when it specified grounds for vacating or correcting awards in sections 1286.2 and 1286.6, we hold that the parties cannot expand that jurisdiction by contract to include a review on the merits.

C. *The Trial Court Acted Within Its Discretion in Denying Appellant Leave to Amend His Complaint.*

█ Appellant argues that the trial court erroneously refused to allow him to amend the complaint to sever the unenforceable provisions of the arbitration agreement. There is no indication in the record that a request to amend

was ever made. If this issue is properly before us, we find no error. The provision for judicial review of the merits of the arbitration award was so central to the arbitration agreement that it could not be severed. To do so would be to create an entirely new agreement to which neither party agreed. " ' "Whether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court according to the intention of the parties." ' " (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 122 [99 Cal.Rptr.2d 745, 6 P.3d 669].) The parties to the contract here agreed to arbitration with judicial review of errors of law and fact. Without that provision, a different arbitration process results. "[C]ourts reform contracts only where the parties have made a mistake [citation], and not for the purpose of saving an illegal contract." (*Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 407 [75 Cal.Rptr.2d 257].)

DISPOSITION

The judgment is affirmed.

Boren, P. J., concurred.

**NOTT, J.**—I respectfully dissent.

The majority has determined that judicial review following voluntary arbitration is strictly limited by Code of Civil Procedure sections 1286.2 and 1286.6,[1] irrespective of the agreement of the parties. I disagree. Under the facts presented here, it is my opinion that the parties may consent to have the trial court review an arbitration award for errors of law and for sufficiency of evidence.

I wish to first make clear I am not advocating that the parties are free to consent to judicial review where fundamental jurisdiction over the subject matter and the parties would otherwise not exist. Nor can the parties "leapfrog" over the trial court to have immediate appellate review. Further, I am not arguing that expanded judicial review may be had where the parties are of unequal bargaining power and the provision for judicial review is presented on a nonnegotiable basis. Lastly, in order to have meaningful judicial oversight, the parties must be able to provide an adequate record, so that the hearing on review is not presented as a swearing contest.

None of those problems exist here. Before us is an arm's-length transaction between two sophisticated parties, a doctor and a hospital. In fact, the

---

[1]Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

party presumably in the weaker bargaining position (Dr. Crowell) is the one attempting to enforce the provision. Next, the parties agreed to have the hearing recorded and transcribed. The arbitrator was required to prepare detailed findings of fact and conclusions of law. The award was to be supported by law and substantial evidence. Judicial review was to be by the trial court. That review was to be based on sufficiency of the evidence and/or errors of law, a standard often employed by a trial court in ruling on a petition for administrative mandamus. Finally, as the majority recognizes, California has personal jurisdiction over Dr. Crowell and Downey Community Health Foundation (DCHF) and also has subject matter jurisdiction over the dispute. In fact, as a result of the majority decision, the entire arbitration agreement has been nullified, and the parties will have to litigate in the trial court. Ironically, after trial is concluded, Dr. Crowell and DCHF will then obtain on appeal the same type of judicial review for which they contracted, i.e., a review based on errors of law and sufficiency of the evidence. The main difference is that now the trial will be in front of a judge or jury at public expense, instead of before an arbitrator, at private expense. A second difference is that by abrogating the arbitration agreement in its entirety, the majority has eliminated the provision wherein the parties agreed that the prevailing party would be entitled to attorney fees and costs.

The majority states that the arbitration provision the parties bargained for is unenforceable because it provides for heightened judicial review that is not allowed by sections 1286.2 and 1286.6. The majority holds that judicial review under those sections is jurisdictional, and the parties are not free to enlarge the scope thereof.

In my view, the majority decision is incorrect. As I will explain in part C., the majority has confused the concept of *lack of fundamental jurisdiction* (which this case does not involve) with the concept of *acting in excess of jurisdiction*. Under the latter concept, parties may (under the appropriate circumstances) agree to have a trial court act beyond its statutory authority. If they so agree, they are estopped from later complaining. That is exactly what occurred here. The parties consented to heightened judicial review as a consideration for executing and performing the contract. Neither may now challenge the ability of the trial court to act beyond its statutory authority.

Further, the majority decision will discourage people from agreeing to arbitrate, which is the exact opposite of California's public policy. Most arbitration proceedings are conducted fairly, economically, and expeditiously by arbitrators who are experts in their field. However, one of the worst positions an attorney can be in is to recommend binding arbitration

and then have to explain to a bewildered (and angry) client an unexplainable adverse result that cannot be remedied. Anecdotal stories abound where an arbitrator has made an award contrary to the facts or the law.[2] Although I have no statistical facts to back it up, I am willing to bet that there are literally hundreds of cases annually that do not go into arbitration because attorneys or parties are fearful of receiving an arbitrary result that is totally final, without the safety net of judicial review.[3]

If my position were followed, those who do not want arbitration with expanded judicial review would not have to opt for it. However, those who do wish it—and would otherwise be unwilling to arbitrate—may do so.

## DISCUSSION

### A.  *The statutes*

There is evidently no published California state court authority resolving the precise issue on this appeal. A consideration of the applicable provisions of the California Arbitration Act (the Act) is thus in order. Section 1281 provides that: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Section 1281 does not limit the terms of such a written agreement and reflects a policy supportive of arbitration.

Section 1281.2, which mandates a court to compel arbitration of an arbitration agreement on petition of a party to the agreement, provides three exceptions (§ 1281.2, subds. (a), (b) & (c)), none of which suggest any restriction on the parties' ability to agree to substantive court review of the award.

Sections 1286.2 and 1286.6 provide grounds for vacating and correcting arbitration awards, respectively. Former section 1286.2 provided: "Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: [¶] (a) The award was procured by corruption, fraud or other undue means. [¶] (b) There was corruption in any of the arbitrators. [¶] (c) The rights of the party were substantially prejudiced by misconduct of a

---

[2]Rosenthal, *Scammed?* (Aug. 2001) Cal. Law. 40.

[3]Some may argue that review can be obtained by having the parties select and pay for one or more arbitrators to act, as in an appellate function. However, that solution flies squarely in the face of one of the goals of arbitration, to wit, economy. The parties will have already paid for the services of the arbitrator. To then require them to pay a high hourly rate for one or more arbitrators is no solution for any but the wealthiest of litigants.

neutral arbitrator. [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (e) . . . [¶] (f) . . . ." (Stats. 1997, ch. 445, § 4.) Section 1286.6 is similar in format. Both sections mandate that if one of the statutory grounds is established, the court must set the award aside. Although neither section specifically provides for vacating or correcting an award because it is erroneous as a matter of law or unsupported by substantial evidence, neither do they state that the statutory grounds are exclusive or that parties cannot agree to additional grounds. Nothing in these statutes suggests that the usual right of parties to contract to the terms of an arbitration in which they are willing to participate has been abrogated.[4]

The California Law Revision Commission (the Commission) supports this interpretation. In 1956, the Commission studied whether the statutory arbitration scheme should be revised. The Commission stated: *"Nothing in the California Statute defines the permissible scope of review by the courts. Numerous court rulings have, however, developed the following basic principles which set the limits for any court review: [¶] . . . [¶] (2) Merits of an arbitration award either on questions of fact or law may not be reviewed except as provided for in the statute in the absence of some limiting clause in the arbitration agreement."* (Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. (1961) p. G-53, italics added.)[5] The Commission thus concluded that nothing in the Act defined the scope of judicial review, implicitly leaving that question to the agreement of the parties.

B. *Case law*

1. *Moncharsh*

The leading California case on the subject of consensual arbitration is *Moncharsh, supra,* 3 Cal.4th 1. While *Moncharsh* did not expressly deal with the issue involved here, that is not to say that it said nothing bearing on that issue. As discussed below, it emphasized the central importance to binding arbitration in seeing that the parties realized the benefit of their bargain. The reason that the arbitration in *Moncharsh* was final, conclusive and not subject to judicial review was because *"the parties have agreed that it be so."*

[4]Trial courts are well able to perform the function of substantive review of arbitration awards. The Legislature has specifically authorized them to do so in connection with public construction contract arbitrations. (§ 1296.)

[5]*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 24 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*), which will be discussed, *post*, approvingly used the very language that is quoted here.

(*Id.* at p. 10.) *Moncharsh* stated that arbitrators could be " '*specifically required to act in conformity with rules of law*' " (*ibid.*, italics added) and directly indicated that review was limited to statutory grounds only " 'in the absence of some limiting clause in the arbitration agreement.' " (*Id.* at p. 25.) These statements strongly suggest that if confronted with the arbitration agreement before us, the Supreme Court would support the parties' ability to contractually agree to trial court review of the merits of the award.

The underlying facts of *Moncharsh* have been set forth in the majority opinion, so I will not repeat them here.

After reviewing 150 years of the legal history of arbitration in California, the Supreme Court held that "an arbitrator's decision is not *generally* reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Moncharsh, supra,* 3 Cal.4th at p. 6, italics added.) The court noted, however, that there were "limited exceptions to this general rule . . . ." (*Ibid.*)

The Supreme Court's conclusion was closely tethered to the specific arbitration provision before it and to its objective of enforcing the mutual intentions of the parties. It said: "The arbitration clause included in the employment agreement in this case specifically states that the arbitrator's decision would be both binding and final. The parties to this action thus clearly intended the arbitrator's decision would be final. Even had there been no such expression of intent, however, it is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." (*Moncharsh, supra,* 3 Cal.4th at p. 9.) "In cases involving private arbitration, '[t]he scope of arbitration is . . . matter of agreement between the parties' [citation] . . . ." (*Id.* at p. 8.) "Thus, an arbitration decision is final and conclusive *because the parties have agreed that it be so.* By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of their bargain." (*Id.* at p. 10.)

*Moncharsh* was therefore based on an arbitration provision that specifically provided that the arbitrator's award was final and binding, and on the fundamental principle that the goal of arbitration is to enforce the agreement of the parties.

Thus, *Moncharsh* did not purport to deal with an arbitration provision like the one here in which the parties expressly agreed that the arbitrator's award must be supported by law and evidence and that a court could review the award to assure that to be the case. In fact, *Moncharsh* specifically excluded

consideration of such a provision from its analysis. As previously mentioned, the Supreme Court stated: " '[*I*]*n the absence of some limiting clause in the arbitration agreement*, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute.' [Citation.]" (*Moncharsh, supra,* 3 Cal.4th at p. 25, italics added.) *Moncharsh* is not therefore determinative of the issue before us.

### 2. *Additional case law*

Several California cases have observed in dictum that parties can contractually agree to the scope of court review of an arbitration award. In *Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576 [19 Cal.Rptr.2d 295], disapproved on other grounds in *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376 [36 Cal.Rptr.2d 581, 885 P.2d 994], the Third District Court of Appeal granted a petition for writ of mandate commanding the trial court to rescind its order vacating an arbitration award. The arbitration provision in that case provided that the award was to be determined in accordance with the contract involved and be binding on the parties. It also required the arbitrator to prepare a statement of decision. It did not address the question of the scope of review of the arbitrator's award. The Court of Appeal stated that "[t]he parties to a contract may draft an arbitration provision so as to afford judicial review of questions of law." (*Pacific Gas & Electric Co. v. Superior Court, supra,* at p. 588.) But it concluded that merely specifying that an arbitrator must state reasons for the award did not create a compelling inference that the purpose of the statement was to afford a basis for broadened range of judicial review. (*Id.* at p. 589.) Implicit in this analysis was the suggestion that if an arbitration provision made clear that the parties desired a different form of judicial review (from that set forth in section 1286.2), such agreement would be valid and enforceable. (*Pacific Gas & Electric Co. v. Superior Court, supra,* at p. 590.)

In her dissenting opinion in *Advanced Micro Devices, Inc. v. Intel Corp., supra,* 9 Cal.4th at page 394, footnote 1, Justice Kennard observed that "The parties can by agreement vary the standard of court review of an arbitrator's award, just as they can vary other aspects of arbitration."[6] That same thought was expressed in the majority opinion at page 376 where the court stated, "arbitrators, *unless expressly restricted by the agreement or the submission to arbitration*, have substantial discretion to determine the scope of their contractual authority to fashion remedies, and . . . judicial review of their awards must be correspondingly narrow and deferential." (Italics added.)

---

[6]This proposition was not the basis of her dissent or dealt with in the majority opinion.

Numerous other cases imply that parties can agree to expanded court review of an arbitration award. For example, in *Crofoot v. Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 186 [260 P.2d 156], cited with approval several times in *Moncharsh,* the court stated that "it must be held that *in the absence of some limiting clause in the arbitration agreement,* the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute." (Italics added, original italics omitted; see also *Siegel v. Prudential Ins. Co.* (1998) 67 Cal.App.4th 1270 [79 Cal.Rptr.2d 726]; *Hohn v. Hohn* (1964) 229 Cal.App.2d 336, 343 [40 Cal.Rptr. 125].)

Although no state court has decided the exact issue before us, several federal circuit courts of appeal, including the Ninth Circuit, have decided this question under the Federal Arbitration Act (FAA). (*Lapine Technology Corp. v. Kyocera Corp.* (9th Cir. 1997) 130 F.3d 884, 888 (*Lapine*) [validating an arbitration provision providing for court review of findings of fact and conclusions of law]; *Gateway Technologies v. MCI Telecommunications Corp.* (5th Cir. 1995) 64 F.3d 993, 996, 997.)[7] While review of awards under the FAA is somewhat broader than under the Act,[8] the logic supporting the parties' right to contract for wider review under the FAA is nonetheless instructive.

*Lapine* involved an arbitration clause that provided the district court could vacate, modify or correct an arbitration award not only on the grounds provided in the FAA, but also if the award was based on erroneous conclusions of law or unsupported findings of fact. The court characterized the issue before it as follows: "Is federal court review of an arbitration agreement necessarily limited to the grounds set forth in the FAA or can the court apply greater scrutiny, if the parties have so agreed?" (*Lapine, supra,* 130 F.3d at p. 887.) A divided appellate panel held that it must honor the agreement of the parties. (*Id.* at p. 888.) "Because these parties contractually agreed to expand judicial review, their contractual provision supplements the FAA's default standard of review and allows for de novo review of issues of law embodied in the arbitration award." (*Id.* at p. 889.) With respect to the argument that its conclusion undermined the purposes of arbitration to provide speedy and inexpensive dispute resolution, *Lapine* responded: "And if substantial evidence and error of law review seems less efficient than the normal scope of arbitration review, that should not cause much pause because: [¶] 'it nevertheless reduces the burden on the Court below that

[7]Not all federal circuits see things as *Lapine* does. (See *UHC Management Co. v. Computer Sciences Corp.* (8th Cir. 1998) 148 F.3d 992.)

[8]Under the FAA, a federal court may vacate or modify an award if it is " 'completely irrational,' " exhibits " 'manifest disregard of law,' " or otherwise fits within other grounds set forth in 9 United States Code section 10 or 11. (*Lapine, supra,* 130 F.3d at p. 888.)

which would exist in the absence of any provision for arbitration.' [Citation.]" (*Ibid.*) The appellate court held that the parties' agreement must be honored because "the primary purpose of the FAA is to ensure enforcement of private agreements to arbitrate, in accordance with the agreements' terms." (*Id.* at p. 888.) " 'Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.' " (*Ibid.,* citing *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478-479 [109 S.Ct. 1248, 1255-1256, 103 L.Ed.2d 488].)

The majority cites *Old Republic Ins. Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 45 Cal.App.4th 631 [53 Cal.Rptr.2d 50] (*Old Republic*) as being pertinent. I disagree.

In *Old Republic,* two insurance companies entered a stipulation for arbitration. The stipulation required the arbitrator to enter findings of fact and conclusions of law, review of which was to be governed by the provisions of the Act relating to review of vacating awards. When the court entered a judgment, the agreement provided that it would be treated as a judgment of the superior court for all purposes and the party against whom the judgment was rendered could seek review of the findings of fact and conclusions of law. In other words, the trial court could review the statutory grounds for vacating the award but the appellate court could review its merits.

Citing *Moncharsh, Old Republic* stated the general rule that the merits of the controversy were not subject to judicial review. It continued, however, that: "Since one of the reasons for this rule is that 'it vindicates the intentions of the parties' [citation], the issue arises whether a contrary intention of the parties, as expressed in the stipulation herein, overrides the general rule." (*Old Republic, supra,* 45 Cal.App.4th at p. 636.) While "[t]here is, of course, nothing which precludes parties to a contractual arbitration from agreeing that the arbitration may be governed by any rules they see fit . . ." (*id.* at p. 637), *Old Republic* held that "the Court of Appeal reviews judgments. Because the trial court entered judgment in accordance with the stipulation of the parties, there is nothing for us to review. . . . [¶] . . . By the terms of their stipulation, the parties attempted to cut out the middleman: the trial judge. They agreed to preclude him from considering whether [the arbitrator's] decision was based on legal error, provided they would not pass 'Go' and head directly to this court. The effect of their stipulation, were we to interpret it as a stipulation for a general reference, would be to place upon this court the duty to perform a function which, in the first instance, is assigned to the trial judge. Although we feel honored by

the parties' assumption we are more capable of performing this task than the court constitutionally assigned to perform this duty in the first place, an assumption we do not necessarily share, we respectfully decline to accept the favor their stipulation seeks to impose on us." (*Id.* at p. 638.)

The shortcoming of the arbitration provision in *Old Republic* was not that the parties agreed to greater review of the arbitrator's award than provided in the Act, but that they sought to agree to jurisdiction of the appellate court and sidestep the trial court. *Old Republic* concluded only that the parties could not confer jurisdiction on the Court of Appeal where none existed. (*Old Republic, supra,* 45 Cal.App.4th at p. 639.) That case is therefore not pertinent to the issue on the present appeal.

C.   *The parties may consent to have the court act in excess of its statutory authority*

As Professor Witkin has noted, the word "jurisdiction" often eludes a precise definition. However, it is broadly defined as " 'the power to hear and determine' " a legal matter. (2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 1, p. 545.) Lack of jurisdiction has been said to mean "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].)

In the present appeal, it is undisputed that California has jurisdiction over these parties and the subject matter. Ergo, here there is "no absence of authority." The issue thus becomes whether the parties may consent to have the trial court apply a standard of review different from that prescribed in sections 1286.2 and 1286.6. I believe under the present facts they may do so, as this situation is no different in both theory and practice from criminal proceedings where the parties agree to have the court impose what would otherwise be an illegal sentence. (*In re Griffin* (1967) 67 Cal.2d 343 [62 Cal.Rptr. 1, 431 P.2d 625] (*Griffin*); *People v. Ellis* (1987) 195 Cal.App.3d 334 [240 Cal.Rptr. 708] (*Ellis*); *People v. Jones* (1989) 210 Cal.App.3d 124 [258 Cal.Rptr. 294] (*Jones*); *People v. Soriano* (1992) 4 Cal.App.4th 781, 785 [6 Cal.Rptr.2d 138] (*Soriano*).) Nor is it different from a civil case in which the parties consent to have the court act in excess of its statutory authority. (*City of Los Angeles v. Cole* (1946) 28 Cal.2d 509 [170 P.2d 928] (*Cole*).)

The difference between "fundamental jurisdiction" and "acts in excess of jurisdiction" was explained in *Ellis, supra,* 195 Cal.App.3d at page 343, as "the difference between an act of a trial court undertaken without 'jurisdiction in the fundamental sense' (a complete absence of authority with respect

to the subject of the dispute) and an act undertaken 'in excess of jurisdiction,' i.e.[,] beyond statutory authority.' "

For example, in *Jones*, the defendant entered into a plea bargain where he agreed to the double use of a five-year sentence enhancement. Without the defendant's agreement, the dual use of the enhancement would have been prohibited under Penal Code section 1170.1. By entering into the agreement, the defendant saved himself from the potential of receiving a life sentence, and instead was sentenced to 12 years four months. The defendant later appealed the sentence as being illegal, contending that the court was without jurisdiction to impose the double use of a Penal Code section 667, subdivision (a) enhancement. The appellate court disagreed, stating that the trial court was not *without* jurisdiction, but simply acted *beyond* statutory authority, i.e., in *excess* of jurisdiction. The appellate court held that the defendant's knowing consent to the sentence, from which he received a substantial benefit, estopped him from challenging the sentence. (*Jones, supra,* 210 Cal.App.3d at pp. 134-137.)

In so holding, the appellate panel in *Jones* followed the rule set out by our Supreme Court in *Griffin* that "When, as here, the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction." (*Griffin, supra,* 67 Cal.2d at p. 347.)

The same rule applies in civil cases. *Cole* involved eminent domain proceedings. A jury returned a verdict on fair market value. Before any remaining issues were tried, and before findings were made or a judgment was entered, the plaintiff filed a notice of intention to move for a new trial. The court granted the motion. The defendants appealed and then dismissed the appeal. The plaintiff and defendants then entered into a stipulation setting the matter for retrial. On receiving an unfavorable judgment on retrial, the defendants appealed. One of the grounds was that the retrial should be declared void because the trial court improperly granted the premature motion for new trial. In roundly criticizing the defendants' argument, our Supreme Court said, " 'Jurisdiction of the subject matter cannot be conferred by estoppel; but one who invokes or consents to a court's jurisdiction is estopped to question it on any ground other than that the court lacks jurisdiction of the subject matter.' [Citations.]" (*Cole, supra,* 28 Cal.2d at p. 515.)

The lesson is that fundamental jurisdiction cannot be bestowed by consent or estoppel. However, in the appropriate circumstances, consent or estoppel

may support a court's act that is in excess of its statutory authority. (*Griffin, supra,* 67 Cal.2d at p. 347.) The rationale is that a party who has received the benefit of his or her bargain should not be allowed to "trifle with the courts." (*Griffin,* at p. 348; *Cole, supra,* 28 Cal.2d at p. 515; *People v. Nguyen* (1993) 13 Cal.App.4th 114, 122-123 [16 Cal.Rptr.2d 490].)

I recognize that not all stipulations to have a court act in excess of statutory authority will be tolerated. Each stipulation must be analyzed in terms of what the impact is not only on the parties, but also on public policy considerations, and on the functioning of the courts. (*Ellis, supra,* 195 Cal.App.3d at pp. 343-344; *Jones, supra,* 210 Cal.App.3d at p. 136.) For example, it is doubtful a stipulation would withstand public policy scrutiny if a defendant charged with a crime were to attempt to plead guilty to a different crime that was not remotely connected with the facts supporting his or her arrest. (*Soriano, supra,* 4 Cal.App.4th at pp. 784-785.) Also, a defendant who consented to banishment as a condition of probation was allowed to challenge that condition on appeal, since banishment is forbidden by public policy. (*People v. Blakeman* (1959) 170 Cal.App.2d 596, 598 [339 P.2d 202].)

Similarly, it would be inappropriate for the parties to stipulate that the court act or decide a case in a manner inconsistent with normal standards of judicial conduct, i.e., deciding a case "by flipping a coin or studying the entrails of a dead fowl."[9]

In the current matter, those concerns are not present. We have sophisticated parties who agreed to the same procedures in arbitration that they would be entitled to have in a court trial: proceedings that were to be recorded; findings of fact and conclusions of law by the trier of fact; an award based on facts and law; and review of the award for errors of law and sufficiency of the evidence.

I conclude that the parties entered into an arm's-length arbitration agreement to have the trial court act in excess of its statutory authority by reviewing the award for errors of law and sufficiency of the evidence. I perceive no substantial argument that would make it inappropriate for the trial court to act in accord with the wishes of the parties. The court would have before it a transcript from which to make an intelligent review, and the standard of review is the same as used in many administrative mandamus proceedings. The public would benefit from having the main burden of work performed by an arbitrator at private expense, rather than using a public

---

[9]A quote from Judge Kozinski's concurrence in *Lapine, supra,* 130 F.3d at page 891.

court. The review to be performed by the trial court for errors of law and sufficiency of the evidence would undoubtedly take less time (and thus public expense) than if the matter were originally tried by the court.

Dr. Crowell executed and worked under the contract. Therefore, DCHF has received a benefit. DCHF should thus be estopped from challenging the trial court's ability to act in excess of its statutory authority. As I have stated, the analysis and case authorities relied on by the majority do not persuade me otherwise. However, before I leave this section, a comment relative to section 1296 is in order.

Section 1296 deals exclusively with public construction contracts. At the time that section was enacted in 1979, numerous provisions of the Act were added and/or amended. Section 1296 states that the parties to a public construction contract may agree in writing to provide (1) that an arbitrator's award must be supported by law and by substantial evidence, and (2) that the trial court may review an award to determine whether that was so.

The majority makes the valid point that if the Legislature wished the same rule to apply to private parties, it could have simply amended sections 1286.2 and 1286.6 in a similar fashion at the same time it enacted section 1296. However, even if that is true, the issue is not necessarily resolved, for several reasons. First, there is nothing in sections 1286.2 and 1286.6 or the Act which prohibits the parties from agreeing to an expanded form of judicial review.

Second, like sections 1286.2 and 1286.6, section 1296 has nothing to do with fundamental jurisdiction. Thus, legislative intent is irrelevant to the application of the same principles of estoppel that I have described above. The parties consented to have the trial court act in excess of its statutory authority, and each received a benefit from that agreement. Neither can now complain.

Third, the standard of review under section 1296 is the same the parties agreed to in the present case.

Fourth, from a pure public policy standpoint, I am at a loss to understand the logic of why heightened judicial review should be allowed for sophisticated parties in a public contract setting and not allowed for sophisticated parties in a private contract setting.

D.   *The purpose of consensual arbitration*

I will conclude by re-emphasizing the impact of the majority decision, something that I briefly addressed at the beginning of this dissent.

Contractual arbitration has a lengthy history in California, having its statutory roots as early as 1851, when the first arbitration statute was adopted. (*Moncharsh, supra,* 3 Cal.4th at p. 16.) The Legislature has indicated a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178].) "The purpose of the [Act] is to promote *contractual arbitration* in accordance with this policy, as a more expeditious and less expensive means of resolving disputes than by litigation in court." (*Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1431 [104 Cal.Rptr.2d 209].) "The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." (*Utah Const. Co. v. Western Pac. Ry. Co.* (1916) 174 Cal. 156, 159 [162 P. 631].) Arbitration has also been favored because of its curative impact on crowded court dockets. (See *Sigala v. Anaheim City School Dist.* (1993) 15 Cal.App.4th 661, 671 [19 Cal.Rptr.2d 38] [discussing judicial arbitration].)

At the core of binding arbitration is the parties' freedom to contract for resolution of disputes in a forum and pursuant to rules of their choosing. Absent the parties' agreement, binding arbitration cannot occur because it involves the decision to waive fundamental constitutional rights, including the right to trial by jury. (*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 407 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109].) Private arbitration is a matter of agreement between the parties and is governed by contract law. (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 313 [24 Cal.Rptr.2d 597, 862 P.2d 158].) Arbitration agreements are to be construed like other contracts to give effect to the intention of the parties. (*Straus v. North Hollywood Hosp., Inc.* (1957) 150 Cal.App.2d 306, 310 [309 P.2d 541].)

Crowell and DCHF agreed to arbitrate their disputes pursuant to the Act except that the award was to be supported by law and substantial evidence and reviewable by a court to ensure the correctness of the award. Invalidating that agreement frustrates the legislative policy behind the Act and undermines the beneficial purposes of arbitration. It leads to the worst of all worlds. The express intent of the parties has been thwarted and, rather than having most of the costly and time-consuming aspects of the litigation resolved by the arbitrator with the trial court merely providing an oversight function, the case will now be fully litigated and tried in court. *Moncharsh* took great pains to emphasize the paramount importance of the parties'

contractual intention regarding arbitration. Yet here the parties' unambiguous intent was disregarded, and the central tenet that arbitration is the contractual construct of the parties has been stifled.

Arbitration is not without its risks because " '[a]rbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity.' " (*Moncharsh, supra,* 3 Cal.4th at p. 10.) In recent years, arbitration has become big business. Arbitrators are paid handsomely for their services. There exists the perception, if not the actual risk, that arbitrators may become biased in favor of parties and large law firms able to provide them with an ongoing volume of business. Given this risk and the arbitrator's broad authority, some parties may fear arbitrating to obtain the benefits of speed and reduced expense without some assurance that these benefits will not be obtained at the price of a capricious arbitrator's award, unsupported by law or evidence. That is precisely what the parties here sought to accomplish by agreement. The greater flexibility given to parties to structure all aspects of arbitration to meet their individualized needs and concerns, the greater likelihood that arbitration will be selected as the dispute resolution mechanism of choice.

Invalidating the arbitration provision here amounts to throwing "the baby out with the bathwater." A review of the merits by the trial court does add some cost and expense to the dispute resolution. It also consumes some additional time by the court and prevents the quickest and cheapest method of arbitrating. However, those are not sufficient reasons to reject the process entirely. The parties are now forced into full court litigation, a far more expensive and time-consuming process. The procedure agreed to by Crowell and DCHF, while not the most expeditious and inexpensive arbitration, is far quicker, less costly and conservative of court time than having the matter fully litigated in court.

For all of the reasons expressed above, I would reverse the judgment of the trial court and remand the matter with instructions to overrule the demurrer.