[No. A103269. First Dist., Div. Three. Feb. 8, 2005.]

COUNTY OF SOLANO, Plaintiff and Respondent, v.
LIONSGATE CORPORATION, Defendant and Appellant.

[No. A105131. First Dist., Div. Three. Feb. 8, 2005.]

COUNTY OF SOLANO, Plaintiff and Respondent, v.
LIONSGATE CORPORATION, et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Parts 3., 4., and 5.

## COUNSEL

Charles O. Morgan, Jr., for Defendant and Appellant.

David W. Ginn and Wendy Getty for Plaintiff and Respondent.

## OPINION

**PARRILLI, J.**—These consolidated appeals arise from an arbitrator's decision, confirmed by the trial court, assessing civil penalties, costs, and attorney fees against Lionsgate Corporation (Lionsgate) and in favor of Solano County. In case number A103269, Lionsgate contends the arbitrator lacked the authority to rule on charges made by the County under the False Claims Act (Gov. Code, § 12650 et seq.), improperly awarded the County prejudgment interest and attorney fees, and misinterpreted certain conduct by Lionsgate as amounting to false claims. In case number A105131, Lionsgate Development Corporation, Kenneth Barker, and Lois Barker challenge an order amending the judgment to include them as judgment debtors.

In the published portion of our opinion, we hold that the arbitrator properly considered the County's False Claims Act charges, but that the County was not entitled to prejudgment interest until after entry of the final arbitration award. Otherwise, we affirm.

## BACKGROUND

The parties' dispute concerned Lionsgate's performance of a contract to replace a bridge in Solano County. The contract incorporated Caltrans Standard Specifications, including the following arbitration clause:

"Claims (demands for monetary compensation or damages) arising under or related to performance of the contract shall be resolved by arbitration unless the Department[1] and the Contractor agree in writing, after the claim has arisen, to waive arbitration and to have the claim litigated in a court of competent jurisdiction. Arbitration shall be pursuant to Public Contract Code Sections 10240–10240.13, inclusive, and applicable regulations (see Subchapter 3 [Sections 301–382, inclusive] of Chapter 2 of Title 1 of the California Code of Regulations).[2] The arbitration decision shall be decided under and in accordance with the law of this State, supported by substantial evidence and, in writing, contain the basis for the decision, findings of fact, and conclusions of law."

The County filed a complaint in arbitration, charging Lionsgate with breach of the covenant of good faith and fair dealing, fraud, and numerous False Claims Act violations. The complaint sought a total of $531,783.46 in damages and penalties. Lionsgate objected to the arbitration, contending the contract did not authorize arbitration of False Claims Act causes of action. The arbitrator overruled the objection, relying on *Crown Homes, Inc. v. Landes* (1994) 22 Cal.App.4th 1273 [27 Cal.Rptr.2d 827] for the proposition that statutory claims may be arbitrated.

After a lengthy series of hearings, the arbitrator issued detailed findings of fact and conclusions of law. He found that Lionsgate's false claims in connection with the bridge contract had caused the County to incur substantial investigative and administrative costs. However, the arbitrator concluded those expenses were not recoverable as damages. He limited the County's recovery to civil penalties under the False Claims Act. The arbitrator found

---

[1] The contract specified that references to "the Department" in the Standard Specifications were deemed references to Solano County.

[2] The parties raise no arguments based on the regulations incorporated by the arbitration clause. We have examined the regulations, currently found in title 1, division 2, chapter 4, sections 1300–1393 of the California Code of Regulations. It appears they have no significant bearing on the issues before us.

that Lionsgate had breached the covenant of good faith and fair dealing, but with no resulting damages, and that Lionsgate had not committed fraud due to the absence of detrimental reliance on the County's part: "Solano was ably represented throughout the performance of the Contract by competent officials and employees, who protected its interests and avoided any losses."

After hearing and overruling the parties' objections to his findings, the arbitrator entered a final award. The County recovered $210,000 in False Claims Act penalties, offset by a $2,000 award to Lionsgate on its cross-complaint. The County then submitted a petition for $690,247.15 in attorney fees and $32,094.55 in costs. Lionsgate did not dispute the costs request. The arbitrator awarded the County $500,000 in attorney fees and $32,094.55 in costs under Public Contract Code section 10240.13. He also awarded the County prejudgment interest on its $208,000 recovery, running from November 13, 2001, the date the findings and conclusions were filed.

The trial court granted the County's petition to confirm the arbitration award, and denied Lionsgate's petition to vacate the award. Lionsgate unsuccessfully moved for a new trial before filing this appeal.

## DISCUSSION

### 1. *The False Claims Act Issues Were Subject to Arbitration*

■ Lionsgate challenges the propriety of the arbitrator's ruling that the contract authorized arbitration of the County's False Claims Act charges. We review the trial court's determination on this point de novo, but we give substantial deference to the arbitrator's own assessment of his contractual authority. (*Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1087 [106 Cal.Rptr.2d 431]; *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1056 [9 Cal.Rptr.3d 286].) We cannot say the arbitrator erred in this instance.

Lionsgate first contends we should give controlling effect to our decision in *Greenlining Institute v. Public Utilities Com.* (2002) 103 Cal.App.4th 1324 [127 Cal.Rptr.2d 736]. We disagree. *Greenlining* did not involve arbitration; it addressed the Public Utilities Commission's jurisdiction to conduct administrative hearings. Here, we are concerned not with the jurisdiction of an administrative tribunal, but with a contractual arbitration clause incorporating statutory provisions that expressly authorize arbitration of public contract disputes. *Greenlining* is simply inapposite.

Lionsgate's primary argument centers on the False Claims Act's references to "a civil action" to recover penalties and damages, and to assessments and findings by "the court." (Gov. Code, § 12651; see also *id.*, § 12652.) However, it is settled that statutory claims are not inarbitrable merely because the statute in question includes such provisions. Business and Professions Code section 17204 declares that "[a]ctions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction . . . ." Nevertheless, our Supreme Court has held that claims for restitution and disgorgement under Business and Professions Code section 17200 et seq. are arbitrable. (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 317–320 [133 Cal.Rptr.2d 58, 66 P.3d 1157]; compare *Greenlining Institute v. Public Utilities Com., supra,* 103 Cal.App.4th at p. 1328–1329.) Similarly, although Civil Code section 1780, subdivision (c) formerly specified that actions under the Consumers Legal Remedies Act (CLRA) must be filed in "any court . . . having jurisdiction of the subject matter," the high court ruled that actions for damages under that version of the CLRA could be arbitrated. (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1082, 1085 [90 Cal.Rptr.2d 334, 988 P.2d 67].) It has also been established that antitrust claims under the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.) are subject to arbitration, despite language in Business and Professions Code section 16750, subdivision (a) contemplating civil actions "in any court having jurisdiction . . . ." (*Crown Homes, Inc. v. Landes, supra,* 22 Cal.App.4th 1273, 1283.)

Lionsgate attempts to distinguish *Crown Homes, Inc. v. Landes,* the case on which the arbitrator relied in rejecting Lionsgate's objection to the arbitration. Lionsgate argues that, unlike the arbitration clause at issue in *Crown Homes,* which included a number of exceptions but none that excluded Cartwright Act claims (see *Crown Homes, Inc. v. Landes, supra,* 22 Cal.app.4th at p. 1282), the contract before us "could exclude False Claims Act charges," which are not "contract claims." However, the County's allegations under the False Claims Act were at least in part "[c]laims (demands for monetary compensation or damages) arising under or related to performance of the contract," under the operative terms of the arbitration clause in the parties' contract. In its petition to vacate the arbitration award, Lionsgate argued that its claims for adjustment of amounts due, which gave rise to the County's False Claims Act charges, were presented "pursuant to the Standard Specifications" incorporated in the contract. Clearly, Lionsgate could reasonably expect to arbitrate the County's responsive False Claims Act causes of action for contract-related "compensation or damages."

In its reply brief, Lionsgate asserts it never agreed to arbitrate claims for civil penalties under the False Claims Act. This argument was also presented in Lionsgate's objection to the arbitration. However, Lionsgate never requested a severance of the penalty claims. When there are "arbitrable

and inarbitrable remedies derived from the same statutory claim," "the arbitrable claims should be severed from those that are inarbitrable and sent to arbitration." (*Broughton v. Cigna Healthplans, supra,* 21 Cal.4th at p. 1088; see also *Cruz v. PacifiCare Health Systems, Inc., supra,* 30 Cal.4th at p. 320.) Moreover, the arbitrator's findings and conclusions clearly indicate the award was designed not simply to penalize Lionsgate, but rather to compensate the County for administrative expenses the arbitrator believed were not recoverable as "damages."[3]

■ The imposition of penalties as a form of compensation was well within the arbitrator's authority. "[A]rbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376 [36 Cal.Rptr.2d 581, 885 P.2d 994].) Here, nothing in the parties' contract limited the remedies available to the arbitrator. "The remedy awarded . . . must bear some rational relationship to the contract and the breach. The required link may be to the contractual terms as actually interpreted by the arbitrator (if the arbitrator has made that interpretation known), to an interpretation implied in the award itself, or to a plausible theory of the contract's general subject matter, framework or intent. [Citation.] The award must be related in a rational manner to the breach (as expressly or impliedly found by the arbitrator).[4]" (*Id.* at p. 381.) The arbitrator in this case found that Lionsgate had breached the covenant of good faith and fair dealing implied in the contract, but concluded: "The damage issue however remains the same with this cause of action as with the False Claims Act. The damages are limited to penalties of the Act."

---

[3] In his "Findings re Damages," the arbitrator stated: "As a direct and proximate cause of Lionsgate's false claims, the County incurred substantial investigative and administrative costs to review, analyze, and respond to the claims. [¶] . . . Investigative and administrative costs are not recoverable damages under the California False Claims Act. Government Code section 12651(a) sets for the recoverable damages as '. . . three times the amount of damages which the . . . political subdivision sustains because of the act of the [false claimant] . . . ,' 'the costs of a civil action . . . to recover any . . . penalties or damages, and . . . a civil penalty of up to $10,000 for each false claim.' In its use of the word 'damages,' the legislature knew that administrative costs, including investigation and attorney fees, are not traditionally recoverable losses either in tort or in Contract [*sic*]. 'Damages which it sustains' must mean actual damages, those recognized and recoverable under existing applicable California law. Particularly is this so, since I interpret the penalty clause to apply, up to $10,000 in the fact-finder's discretion."

We have no occasion on this appeal to consider whether the arbitrator's analysis of the damages recoverable under the False Claims Act was correct.

[4] "The award is rationally related to the breach if it is aimed at compensating for, or alleviating the effects of, the breach. . . ."

We need not decide whether a purely punitive assessment of monetary penalties under the False Claims Act would have been beyond the scope of the arbitration clause. Lionsgate did not seek to sever the County's claims for such penalties, and the arbitrator did not impose penalties merely to punish Lionsgate. When ruling on Lionsgate's objection, the arbitrator was not required to exclude all the County's False Claims Act charges from arbitration merely because some of them might encompass a remedy beyond the scope of the arbitration clause. The arbitrator's rejection of Lionsgate's objection to arbitration was fully consistent with both the terms of the arbitration clause and the procedural guidelines established by our Supreme Court.

Lionsgate does not raise the question considered in *Cruz* and *Broughton*, which is whether there is an "inherent conflict" between a statutory remedy and arbitration. (*Broughton v. Cigna Healthplans, supra,* 21 Cal.4th at p. 1077; *Cruz v. PacifiCare Health Systems, Inc., supra,* 30 Cal.4th at p. 318.) We note, however, that neither of the controlling factors identified by our Supreme Court militates against arbitration of False Claims Act charges in this instance.

█ The high court held that statutory damages claims serving important public purposes are arbitrable, so long as the public benefits are merely incidental to the private benefits sought by the claimant. (*Broughton v. Cigna Healthplans, supra,* 21 Cal.4th at p. 1084; *Cruz v. PacifiCare Health Systems, Inc., supra,* 30 Cal.4th at pp. 317–318; see also *Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 635–636 [87 L.Ed.2d 444, 105 S.Ct. 3346].) False Claims Act penalties do serve a public purpose by deterring false claims by public works contractors, but in this case that public purpose was merely incidental to the primary benefit of compensating the County for the expenses associated with the submission of false claims.

The second factor considered by the *Broughton* and *Cruz* courts was whether a judicial forum would have significant institutional advantages over arbitration in the administration of a remedy. In both cases, claims for injunctive relief on behalf of public interests were held unsuitable for arbitration. (*Broughton v. Cigna Healthplans, supra,* 21 Cal.4th at pp. 1080–1082; *Cruz v. PacifiCare Health Systems, Inc., supra,* 30 Cal.4th at pp. 315–316.) Here, however, the County's claims implicated no broad public remedy. We perceive no "institutional advantages" obtainable in a judicial forum that might preclude arbitration of these False Claims Act charges.[5]

---

[5] Lionsgate makes cursory reference to qui tam actions under the False Claims Act. (See Gov. Code, § 12652, subd. (c).) However, this is not a qui tam action and no qui tam plaintiff could ever seek arbitration, not being a party to the contract. Lionsgate also notes in passing that the Attorney General may participate in some False Claims Act actions brought by

■ Lionsgate asserts the arbitration clause was part of a contract of adhesion, and therefore must be construed against the County. "An arbitration provision in an adhesion contract is legally enforceable unless the provision (1) does not fall within the reasonable expectations of the weaker party, or (2) is unduly oppressive or unconscionable. [Citations.]" (*Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1110 [63 Cal.Rptr.2d 261].) Assuming for purposes of argument that this contract was adhesive, we have already determined that arbitration of the County's claims for compensation related to performance of the contract was within Lionsgate's reasonable expectations. Nor does Lionsgate convince us the arbitration clause was oppressive or unconscionable; it makes no attempt to apply the analysis employed in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113–121 [99 Cal.Rptr.2d 745, 6 P.3d 669], which is controlling on this point. Lionsgate demonstrates neither "procedural" nor "substantive" unconscionability, and thus gives us no reason to invalidate the arbitration clause. (*Id.* at p. 114.)

Lionsgate argues further that the arbitration clause must be construed against the County because it is ambiguous regarding the arbitrability of False Claims Act charges. We disagree. The plain terms of the clause bring all claims for contract-related "compensation," as well as "damages," within the scope of arbitration. As noted above, the penalties sought by the County and awarded by the arbitrator functioned as a form of "compensation" for administrative expenses occasioned by Lionsgate's bad faith performance of the contract. Thus, there is no need for us to construe the clause against the County. (*Powers v. Dickson, Carlson & Campillo, supra*, 54 Cal.App.4th at pp. 1111–1112.)

■ Lionsgate also contends it did not validly waive its right to a jury trial on the False Claims Act charges. However, it has long been held that parties implicitly and enforceably give up the right to a jury trial when they agree to arbitration. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 714 [131 Cal.Rptr. 882, 552 P.2d 1178]; see also, e.g., *Broughton v. Cigna Healthplans, supra*, 21 Cal.4th at p. 1084.)

---

political subdivisions. (See Gov. Code, § 12652, subd. (b).) It contends an arbitrator might not be appointed within the time permitted for the Attorney General to act. But Lionsgate makes no showing this case involves state funds, as required by statute for the Attorney General's participation. (Gov. Code, § 12652, subd. (b)(2).) Our review of the record indicates the bridge project undertaken by Lionsgate was funded by the County and the federal government. In the absence of adequate briefing or a record raising the issue, we express no view on the arbitrability of False Claims Act charges involving participation by the Attorney General.

## 2. *Prejudgment Interest Must Be Limited to the Postaward Period*

Lionsgate challenges the arbitrator's award of prejudgment interest. Our review of this issue is governed by a different standard than is ordinarily applied to judgments confirming arbitration awards. Public Contract Code section 10240.12, incorporated by reference in the arbitration clause before us, provides in relevant part: "a court shall vacate the award, or part thereof, if it determines either that the award, or part thereof, is not supported by substantial evidence or that it is not decided under or in accordance with the laws of this state."

The County argues that Public Contract Code section 10240.12 does not apply, because as a county with less than 500,000 residents it is governed by Public Contract Code section 20150 et seq., which do not incorporate the provisions of the State Contract Act. If this were correct, it would certainly have been deceptive for the County to include in the contract a provision incorporating the terms of Public Contract Code section 10240.12. Nor would the County be able to rely on Public Contract Code section 10240.13 to support the arbitrator's awards of interest and attorney fees. However, Public Contract Code sections 22200 and 22201 make it clear the County cannot escape application of the standard of review mandated by Public Contract Code section 10240.12.[6]

■ The County also contends an agreement to expand the trial court's jurisdiction to review arbitration awards is unenforceable under *Crowell v. Downey Community Hospital Foundation* (2002) 95 Cal.App.4th 730 [115 Cal.Rptr.2d 810]. The *Crowell* court, however, noted that the Legislature has specifically authorized public construction contract provisions for judicial review on the merits of an arbitration award. (Code Civ. Proc., § 1296.[7]) The

---

[6] Public Contract Code section 22200, subdivision (a) provides, in relevant part: " 'Public works contract' means . . . a contract awarded through competitive bids or otherwise by the state, any of its political subdivisions or public agencies for the erection, construction, alteration, repair, or improvement of any kind upon real property."

Public Contract Code section 22201 provides: "Unless otherwise prohibited by law, the terms of any public works contract may include at the time of bidding and of award a provision for arbitration of any claim pursuant to Article 7.1 (commencing with Section 10240) of Chapter 1 of Part 2."

[7] The provisions of Code of Civil Procedure section 1296 parallel those of Public Contract Code section 10240.12 in all respects relevant here. Section 1296 states: "The parties to a construction contract with a public agency may expressly agree in writing that in any arbitration to resolve a dispute relating to the contract, the arbitrator's award shall be supported by law and substantial evidence. If the agreement so provides, a court shall, subject to Section 1286.4, vacate the award if after review of the award it determines either that the award is not supported by substantial evidence or that it is based on an error of law."

court relied on the absence of such authorization in other contexts to support its holding that parties cannot agree to expand the trial court's jurisdiction to review arbitration awards under Code of Civil Procedure sections 1286.2 and 1286.6. (*Crowell v. Downey Community Hospital Foundation, supra*, 95 Cal.App.4th at pp. 738, 739.) Because this is a public construction contract case controlled by Code of Civil Procedure section 1296 and Public Contract Code section 10240.12, *Crowell* provides no support for the County's position on the standard of review. ■ We review the trial court's rulings on Lionsgate's petition to vacate the award under the substantial evidence test, except for legal determinations, which we review independently.

Although Lionsgate raised the standard of review mandated by Public Contract Code section 10240.12 in its petition to vacate, the trial court applied the usual restricted standard of review required by Code of Civil Procedure section 1286.2 and *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 27–28 [10 Cal.Rptr.2d 183, 832 P.2d 899]. The court ruled there was no showing the arbitrator had exceeded his powers in awarding prejudgment interest. The court also found that "[t]he prejudgment interest award bears a rational relationship to the contract which was governed by Public Contract Code § 10240.13,[8] and so the award must be upheld under *Advanced Micro Devices, Inc. v. Intel Corp.*[, *supra*,] 9 Cal.4th 362, 381."

In its motion for new trial, Lionsgate protested the court's application of the standard of review provided in Code of Civil Procedure section 1286.2. However, the trial court inexplicably found that the "statement of decision indicates that the court did analyze each issue for legal error, in accordance with Public Contract Code section 10240.12, and found none." As for the award of prejudgment interest, the court ruled it was authorized by Public Contract Code section 10240.13 (see fn. 4, *ante*).

■ On appeal, Lionsgate contends the award of prejudgment interest was improper because the False Claims Act does not provide for such a recovery. But it is well established that prejudgment interest may be awarded under Civil Code section 3287 even if it is not specifically authorized by the statute underlying the plaintiff's claims. (*Tripp v. Swoap* (1976) 17 Cal.3d 671, 681–682 [131 Cal.Rptr. 789, 552 P.2d 749], overruled on another point in *Frink v. Prod* (1982) 31 Cal.3d 166, 180 [181 Cal.Rptr. 893, 643 P.2d 476]; *Currie v. Workers' Comp. Appeals Bd.* (2001) 24 Cal.4th 1109, 1115–1117 [104 Cal.Rptr.2d 392, 17 P.3d 749].)

---

[8] Public Contract Code section 10240.13 provides, in relevant part: "Interest may be recovered as part of the award as in a civil action. The arbitrator has the same authority as a court in awarding interest and the commencement of the arbitration is equivalent to the filing of an action under subdivision (b) of Section 3287 of the Civil Code for the purpose of an award of interest."

█ Lionsgate also argues there was no award of "damages" on which prejudgment interest could be granted. There is partial merit in this claim. Civil Code section 3287 authorizes prejudgment interest in two situations: (1) when "[a] person . . . is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day" (Civ. Code, § 3287, subd. (a)); and (2) in the court's discretion, when "[a] person . . . is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated" (Civ. Code, § 3287, subd. (b)). (See generally 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 833 et seq., p. 751 et seq.)

Here, the arbitrator expressly refrained from awarding any "damages" to the County, either on its False Claims Act charges or on its cause of action for breach of the covenant of good faith and fair dealing. Furthermore, the penalties awarded to the County were not "certain" until entry of the final award; the arbitrator had to resolve the parties' objections to his findings and conclusions, and the ultimate amount of the penalties awarded was not "capable of being made certain through calculation," but depended on the arbitrator's resolution of the parties' conflicting claims and the exercise of his discretion to impose penalties. (See, e.g., *Fireman's Fund Ins. Co. v. Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154, 1173 [286 Cal.Rptr. 146]; *Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 774 [118 Cal.Rptr.2d 629].)

█ However, the County was entitled to an award of interest under Civil Code section 3287, subdivision (a) as of the date of the final award. The award itself became a contractual obligation at that point, and case law establishes the County's right to postaward, prejudgment interest running from August 2, 2002, when the final award was entered. (Code Civ. Proc., § 1287.6; *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1106–1107 [40 Cal.Rptr.2d 700]; *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 27 [96 Cal.Rptr.2d 553].)[9] The award of interest from the earlier date of the arbitrator's findings and conclusions was not in accordance with state law, and the trial court should have vacated that portion of the award under the standard set forth in Public Contract Code section 10240.12.

3.–5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[9] The County was actually entitled to interest on its entire recovery, not just on the amount of the penalties as specified by the arbitrator. (*Britz, Inc. v. Alfa-Laval Food & Dairy Co., supra,* 34 Cal.App.4th at pp. 1106–1107.) The County has not appealed, however.

*See footnote, *ante,* page 741.

## DISPOSITION

In case number A103269, the judgment is reversed and the trial court is directed to vacate that portion of the arbitration award granting the County prejudgment interest for the period prior to entry of the final arbitration award. In all other respects, the judgment is affirmed. In case number A105131, the order amending the judgment is affirmed.

McGuiness, P. J., and Pollak, J., concurred.

A petition for a rehearing was denied March 1, 2005, and appellant's petition for review by the Supreme Court was denied May 18, 2005.