49 Cal.Rptr.3d 187 (2006)
143 Cal.App.4th 207
CABLE CONNECTION, INC., et al., Plaintiffs and Appellants,
v.
DIRECTV, INC., Defendant and Respondent.
No. B188278.
Court of Appeal of California, Second District, Division Four.
September 22, 2006.
*190 Beatie and Osborn and Daniel A. Osborn for Plaintiffs and Appellants.
Reed & Smith and Andrew E. Paris; Kirkland & Ellis, Michael E. Baumann, Los Angeles, and Becca Wahlquist for Defendant and Respondent.
WILLHITE, Acting P.J.

INTRODUCTION
Plaintiffs and appellants Cable Connection, Inc., TV Options, Inc., Swartzel Electric, and Orbital Satellite, Inc., appeal from the trial court's order in favor of defendant and respondent DIRECTV, Inc., vacating an arbitration award by which the majority of arbitrators determined that the parties' arbitration agreement, though silent on the issue, nonetheless permitted classwide arbitration. (Code Civ. Proc., § 1286.2.) The trial court vacated the arbitration award on the grounds that the arbitrators exceeded their authority by writing terms into the parties' agreement; the arbitrators refused to hear material evidence of intent offered by DIRECTV; and the arbitrators exceeded their powers by making errors of law and erroneously relying on California procedural law, even though the arbitration agreement specifically withheld from the arbitrators the power to make errors of law, and provided that errors of law were subject to judicial review.
We conclude that the provision in the arbitration agreement purporting to provide for judicial review of errors of law is void and unenforceable, and must be severed from the agreement. Accordingly, the trial court exceeded its authority when it reviewed the merits of the controversy. We further conclude that the arbitrators did not violate any express provisions of the parties' agreement, and did not refuse to hear material evidence. We shall therefore reverse the order vacating the arbitration award, and shall direct the trial court to enter a new order confirming the award.

FACTUAL AND PROCEDURAL BACKGROUND
Appellants (hereafter, "the dealers") are current and former DIRECTV dealers who sold and installed DIRECTV services and products. In 1996, the dealers were required to enter into DIRECTV's "residential dealer agreement." In 1998, the dealers were required to sign a new contract, the "sales agency agreement."
Both the residential dealer agreement and the sales agency agreement contain a provision requiring arbitration of disputes arising out of the agreement. Both contracts are silent, however, on the issues of class action lawsuits and classwide arbitration.[1]
The arbitration provision in the sales agency agreement, which is set forth in section 18.12 of the contract, states as follows: "(a) Any dispute or claim arising out of the interpretation, performance, or *191 breach of this Agreement, including without limitation claims alleging fraud in the inducement, shall be resolved only by binding arbitration, at the request of either party, in accordance with the rules of the American Arbitration Association, modified as herein provided.... The arbitrators shall apply California substantive law to the proceeding, except to the extent Federal substantive law would apply to any claim.... The arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error. The decision of the arbitrators may be entered and enforced as a final judgment in any court of competent jurisdiction. The parties shall share equally the arbitrator's fees and other costs of the arbitration." (Italics added.)
Section 18.12, subsection (c), provides: "This Section and any arbitration conducted hereunder shall be governed by the United States Arbitration Act (9 U.S.C. Section 1, et seq.). The parties acknowledge that the transactions contemplated by this Agreement involve commerce, as defined in said Act. This Section 18.12 shall survive the termination or expiration of this Agreement."
Appellants initially brought suit in Oklahoma state court, seeking to litigate claims on behalf of a nationwide class. The Oklahoma court apparently directed the dealers to file a demand for arbitration in California state court.
On March 11, 2004, the dealers filed a statement of claim and demand for class arbitration with the American Arbitration Association (AAA). The class is defined as DIRECTV dealers who sold, installed, repaired, or maintained home satellite service for DIRECTV from 1996 until the present. The dealers claimed that DIRECTV unilaterally reduced commissions and assessed "chargebacks," in breach of the parties' agreements. The dealers state claims for breach of contract, unfair business practices, breach of fiduciary duty, violation of California antitrust law, and conversion of commission payments.
DIRECTV served its answer and counterclaim on April 12, 2004.
In keeping with AAA rules, the arbitrators first addressed the issue whether the parties' agreement to arbitrate permits or prohibits classwide arbitration. Those rules provide: "Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration agreement, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the `Clause Construction Award'). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award.... If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court."
A preliminary conference was held in November 2004, and thereafter the parties submitted briefing on the issue of class arbitration. Oral argument was held in January 2005.
In March 2005, the three-member arbitration panel issued its "first amended clause construction award." Two of the three arbitrators agreed that the arbitration clause was silent regarding the right to bring a class action. Recognizing that the arbitration agreement provided that California substantive law is to be applied, *192 the majority construed the agreement as permitting class arbitration, pursuant to Blue Cross of California v. Superior Court (1998) 67 Cal.App.4th 42, 78 Cal.Rptr.2d 779 (Blue Cross), and Keating v. Superior Court (1982) 31 Cal.3d 584, 183 Cal.Rptr. 360, 645 P.2d 1192 (Keating), reversed on other grounds in Southland Corp. v. Keating (1984) 465 U.S. 1, 11, 104 S.Ct. 852, 79 L.Ed.2d 1.[2] The majority made clear that they were "not yet requiring class arbitration and [we're] not certifying a class. We are simply saying that the clause in question does not forbid class arbitration and therefore find it is permitted."[3]
The third arbitrator dissented, finding that "[t]here is ample indication in the parties' Agreement that they intended their disputes to be resolved by arbitration between them separately and individually, and not in a class-wide arbitration." The dissenting arbitrator further opined that the jurisprudence established in the Keating and Blue Cross cases permitting classwide arbitration was inapplicable "as a procedural rule" in a case that is to be governed by the Federal Arbitration Act.
DIRECTV then filed in the trial court a petition to vacate the award. The parties submitted briefs, and oral argument was held in June 2005. After the California Supreme Court issued its decision in Discover Bank v. Superior Court (2005) 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, the trial court sought additional briefing from the parties and held another oral argument.
The bases upon which DIRECTV sought vacatur were that (1) by writing terms into the parties' silent agreements, the arbitrators exceeded their authority; (2) the arbitrators refused to hear material evidence of intent offered by DIRECTV; and (3) because the arbitration agreement specifically withheld from the arbitrators the power to make errors of law, the arbitrators exceeded their contractually-limited authority by making errors of law and legal reasoning.
On November 11, 2005, the trial court vacated the award, finding that the arbitrators exceeded their powers by rewriting the parties' agreements to allow for classwide arbitration, by applying Keating, supra, 31 Cal.3d 584, 183 Cal.Rptr. 360, 645 P.2d 1192 and Blue Cross, supra, 67 Cal. App.4th 42, 78 Cal.Rptr.2d 779 (finding them to be inapplicable because they establish procedural and not substantive law), and committed reversible error by failing to admit extrinsic evidence offered by DIRECTV.
This timely appeal followed.

DISCUSSION
This appeal is taken from the trial court's order vacating the arbitrators' partial final award establishing that the parties' arbitration agreement permits classwide arbitration.[4] (Code Civ. Proc., *193 § 1285 [party may petition court to confirm, correct or vacate arbitration award];[5] § 1294, subd. (c) [aggrieved party may appeal from order vacating an award].) The parties do not dispute that it was proper for the arbitrators to decide, in the first instance, whether classwide arbitration is permitted under their agreement. Rather, DIRECTV contends that the arbitrators wrongly decided that classwide arbitration is to be permitted even though they found the agreement to be silent on the issue and that, accordingly, the trial court properly vacated the award. An arbitration award may be vacated where the trial court determines that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).)
The dealers contend that the trial court erred in vacating the arbitrators' award because the arbitrators did not exceed their powers, and indeed, the trial court exceeded its jurisdiction by examining whether the arbitrators made errors of law. They argue that, despite the presence of language in the arbitration agreement purporting to allow for judicial review of errors of law by the arbitrators, such review is not permissible. As we shall explain, we agree.
We recognize that the dealers did not raise this argument in the trial court, and instead responded only on the merits of DIRECTV's legal arguments against the award. However, we decline DIRECTV's suggestion that we consider the issue as having been forfeited because it is being raised for the first time on appeal. This court has discretion to consider a new theory on appeal which presents an issue of law based on undisputed facts. (In re Santos Y. (2001) 92 Cal. App.4th 1274, 1303, fn. 15, 112 Cal.Rptr.2d 692.) Because the issue involves whether the trial court exceeded its statutory authority to review arbitration awards under the California Arbitration Act (§ 1280, et seq.), and whether by contract the parties can expand the court's authority under the Actquestions of continuing public concern and involving important public policywe find forfeiture to be inappropriate, and shall consider the issue. (Neumann v. Melgar (2004) 121 Cal.App.4th 152, 164, 16 Cal.Rptr.3d 754.)

Judicial Review of Arbitration Awards
In determining whether an arbitrator exceeded his powers, we review the trial court's decision de novo, while giving substantial deference to the arbitrators' own assessment of their contractual authority. (Advanced Micro Devices, Inc. v. Intel Corp. (1994) 9 Cal.4th 362, 376, 36 Cal.Rptr.2d 581, 885 P.2d 994.)
The parties' contract contained standard language regarding arbitration, that "[a]ny dispute or claim arising out of the interpretation, performance, or breach of this Agreement ..., shall be resolved only by binding arbitration, at the request of either party." (Italics added.) As is typically the case in arbitration agreements, the parties thus indicated their intent that the arbitration award would be final.
It is by now well-established that "both because it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, `The merits of the controversy between the parties are *194 not subject to judicial review.' [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.] [¶] Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 11, 10 Cal.Rptr.2d 183, 832 P.2d 899 [hereafter Moncharsh].)
DIRECTV points out, however, that Moncharsh also recognized that arbitration agreements are contracts, and that parties to such contracts may vary the terms of their agreement. The Moncharsh court stated: "In cases involving private arbitration, `[t]he scope of arbitration is ... a matter of agreement between the parties' [citation], and `"[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission."' [Citations.]" (Moncharsh, supra, 3 Cal.4th at pp. 8-9, 10 Cal.Rptr.2d 183, 832 P.2d 899.) DIRECTV contends that the trial court was not bound to follow Moncharsh's limitations on judicial review in light of the parties' specific arbitration contract which required the arbitrators to follow the rule of law, and provided for judicial review of errors of law.
However, the Moncharsh court also made clear its view that the Legislature placed limits on the scope and availability of judicial review of arbitration awards, and that state courts and parties must abide by those statutory limits. Section 1280, et seq., the California Arbitration Act, "represents a comprehensive statutory scheme regulating private arbitration in this state. [Citation.]" (Moncharsh, supra, at p. 9, 10 Cal.Rptr.2d 183, 832 P.2d 899.) The court "conclude[d] that an award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in sections 1286.2 (to vacate) and 1286.6 (for correction)." (Id. at p. 33, 10 Cal.Rptr.2d 183, 832 P.2d 899.) The Legislature set forth various grounds for vacation and correction of arbitration awards, and "`[a]n error of law is not one of the grounds.' [Citation.]" (Id. at p. 14, 10 Cal.Rptr.2d 183, 832 P.2d 899.)
The Moncharsh court further explained: "In light of the development of decisional law embracing as exclusive the statutory grounds to vacate an arbitration award, as well as the apparent intent of the Legislature to generally exclude nonstatutory grounds to vacate an award, we adhere to the ... line of cases that limit judicial review of private arbitration awards to those cases in which there exists a statutory ground to vacate or correct the award. Those decisions permitting review of an award where an error of law appears on the face of the award causing substantial injustice have perpetuated a point of view that is inconsistent with the modern view of private arbitration and are therefore disapproved." (Moncharsh, supra, at pp. 27-28, 10 Cal.Rptr.2d 183, 832 P.2d 899, italics added.) In addition, the court made clear that arbitrators do not "exceed[ ] their powers" within the meaning of former section 1286.2, subdivision (d) (now subdivision (a)(4)), or section 1286.6, subdivision (b), by making errors of law in reaching their decision. "It is well settled that `arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' [Citations.] A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers." (Id. at p. 28, 10 Cal.Rptr.2d 183, 832 P.2d 899.)
The language in the arbitration agreement at issue here, that the arbitrators *195 "shall not have the power to commit errors of law or legal reasoning," has no effect on the availability of judicial review for errors of law. While the agreement varied in this respect from the typical arbitration agreement contemplated by the Moncharsh court, in which the arbitrators are not constrained to follow the rule of law, still the review which may be conducted by the courts is limited by statute. An argument similar to the one DIRECTV makes here was rejected in Pacific Gas & Electric Co. v. Superior Court (1993) 15 Cal.App.4th 576, 19 Cal.Rptr.2d 295. The court stated: "[Appellant] argues that this case lies within exceptions to the general rule. Its most far-reaching claim is that an arbitration award predicated upon a qualified submission, by which the arbitrator is directed to apply the law as would a court, is reviewable for errors of law. [Appellant] impliedly locates this exception in [former] section 1286.2, subdivision (d) [now subdivision (a)(4)], which directs the vacation of an award when `the arbitrators exceeded their powers....' The argument simply put is that if the arbitrators are directed to apply the law and fail to do so they exceed their powers. The claim is not persuasive. It confuses the mode of decision with its finality." (Pacific Gas & Electric Co. v. Superior Court, supra, 15 Cal.App.4th at p. 587, 19 Cal.Rptr.2d 295, italics added, fn. omitted; abrogated on other grounds by Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at pp. 376-377, 36 Cal.Rptr.2d 581, 885 P.2d 994. Accord Baize v. Eastridge Companies (2006) 142 Cal.App.4th 293, 47 Cal. Rptr.3d 763.)
The court in Alexander v. Blue Cross of California (2001) 88 Cal.App.4th 1082, 106 Cal.Rptr.2d 431 agreed. "Arbitrators do not `exceed[ ] their powers' within the meaning of [former] section 1286.2, subdivision (d) `merely by rendering an erroneous decision on a legal or factual issue, so long as the issue was within the scope of the controversy submitted to the arbitrators. "The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement." (Moncharsh, supra, at p. 28 [10 Cal.Rptr.2d 183, 832 P.2d 899].)' (Moshonov v. Walsh (2000) 22 Cal.4th 771, 775-776 [94 Cal.Rptr.2d 597, 996 P.2d 699], italics added.) In short, `[h]aving submitted the ... issue to arbitration, [plaintiff] cannot maintain the arbitrator[ ] exceeded [his] powers, within the meaning of section 1286.6, subdivision (b), by deciding it, even if [he] decided it incorrectly.' (Moore v. First Bank of San Luis Obispo (2000) 22 Cal.4th 782, 787 [94 Cal.Rptr.2d 603, 996 P.2d 706].)" (Alexander v. Blue Cross of California, supra, 88 Cal.App.4th at p. 1089, 106 Cal.Rptr.2d 431.) The Alexander court continued: "Even where an arbitration agreement requires the arbitrator to apply a particular law or body of law, `an arbitrator's failure to apply such a law is not in excess of an arbitrator's powers within the meaning of section 1286.2, subdivision (d).' (Marsch v. Williams (1994) 23 Cal.App.4th 238, 244 [28 Cal.Rptr.2d 402] [arbitrator did not exceed power by failing to apply California Corporations law even though agreement stated that California law was to control].) [¶] A different conclusion would unduly extend the scope of judicial review of arbitration proceedings. `The fact that the parties restrict the arbitrator to a decision of the issues in the manner of a court of law does not mean that they expect that the decision is reviewable. The mode of decision and its reviewability are separate questions.' (Pacific Gas & Electric Co. v. Superior Court, [supra], 15 Cal.App.4th [at p.] 589 [19 Cal.Rptr.2d 295], italics added.)"[6] *196 (Alexander v. Blue Cross of California, supra, 88 Cal.App.4th at p. 1090, 106 Cal.Rptr.2d 431.)
In addition, of course, the arbitration agreement at issue here provided that "the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error [of law or legal reasoning]." Suffice it to say, however, that we are in accord with the appellate courts that have previously considered the effect of similar language and concluded that parties cannot contractually expand the jurisdiction of the trial courts to permit review of arbitration awards for legal error.
In Crowell v. Downey Community Hospital Foundation (2002) 95 Cal.App.4th 730, 115 Cal.Rptr.2d 810 (hereafter Crowell), the plaintiff's complaint sought a declaration of rights as to the enforceability of an arbitration provision explicitly requiring that the arbitrator make findings of fact and conclusions of law, that the award be supported by law and substantial evidence, and that the merits of the award be subject to court review. Specifically, the arbitration agreement stated that "`upon the petition of any party to the arbitration, a court shall have the authority to review the transcript of the arbitration proceedings and the arbitrator's award and shall have the authority to vacate the arbitrator's award, in whole or in part, on the basis that the award is not supported by substantial evidence or is based upon an error of law.'" (Crowell, supra, at pp. 732-733, 115 Cal.Rptr.2d 810.)
Relying on Moncharsh, supra, and its conclusion that the statutory bases for vacating and correcting arbitration awards are exclusive, the Crowell court held that the contractual language quoted above was void and unenforceable. (Crowell, supra, at pp. 735-737, 115 Cal.Rptr.2d 810.) It concluded that, because the Legislature clearly set forth the trial court's jurisdiction to review arbitration awards when it specified the grounds for vacating or correcting awards in sections 1286.2 and 1286.6, parties cannot expand that jurisdiction by contract to include a review on the merits.[7]
The Crowell court further noted, as did the court in Moncharsh, that the Legislature *197 specifically provided in section 1296, governing public construction contract arbitration agreements, that the parties may agree to judicial review of an arbitrator's award.[8] (Crowell, supra, at pp. 737-738, 115 Cal.Rptr.2d 810; Moncharsh, supra, 3 Cal.4th at pp. 25-26, 10 Cal.Rptr.2d 183, 832 P.2d 899.) Section 1296 also specifies that, if the parties' agreement so provides, a court shall vacate the award if upon review the court finds the award to be unsupported by substantial evidence, or to be based on an error of law.
Regarding section 1296, the Moncharsh court observed: "By specifically providing in that provision for judicial review and correction of error, but not in section 1286.2, we may infer that the Legislature did not intend to confer traditional judicial review in private arbitration cases. `"`Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject ... is significant to show that a different intention existed.'" [Citation.]' (People v. Drake (1977) 19 Cal.3d 749, 755 [139 Cal. Rptr. 720, 566 P.2d 622].)" (Moncharsh, supra, 3 Cal.4th at p. 26, 10 Cal.Rptr.2d 183, 832 P.2d 899, italics added. See also Crowell, supra, 95 Cal.App.4th at p. 738, 115 Cal.Rptr.2d 810: ["No such review is authorized for other forms of arbitration in the Act. This suggests the legislative intent that parties cannot agree to a review on the merits. If that were not the case section 1296 would be superfluous."].)[9]
Crowell was followed in Oakland-Alameda County Coliseum Authority v. CC Partners (2002) 101 Cal.App.4th 635, 124 Cal.Rptr.2d 363 (CC Partners), in which the parties' license agreement contained a provision purporting to allow for de novo judicial review of questions of law decided by the arbitrator.[10] The CC Partners *198 court agreed with the holding in Crowell, "that the parties to an arbitration agreement cannot contractually expand the scope of judicial review beyond that provided by statute." (CC Partners, supra, at p. 645, 124 Cal.Rptr.2d 363, citing Crowell, supra, 95 Cal.App.4th at p. 739, 115 Cal.Rptr.2d 810.)
DIRECTV further contends that because the parties specified that the Federal Arbitration Act (FAA) would govern the arbitration proceedings, we are constrained to enforce the arbitration agreement according to its terms, including the provision that allows for judicial review of legal error. DIRECTV cites the case of Volt Info. Sciences v. Leland Stanford Jr. U. (1989) 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (Volt), as authority for the proposition that "the `primary purpose' of the FAA is to `ensur[e] that private agreements to arbitrate are enforced according to their terms' in order to `give effect to the contractual rights and expectations of the parties.'" However, numerous federal circuit courts have considered the precise issue whether private parties may contract for an expanded standard of judicial review of arbitral decisions under the FAA. The circuits are currently split on whether to extend the ruling in Volt to permit enforcement of such provisions.
The Ninth Circuit Court of Appeals has held that federal courts may only review an arbitrator's decision on the grounds set forth in the FAA (which grounds are admittedly broader than those set forth in the California Arbitration Act), and that private parties have no power to alter or expand those grounds. (Kyocera Corp. v. Prudential-Bache (9th Cir.2003) 341 F.3d 987 (en banc) (Kyocera), overruling LaPine Technology Corp. v. Kyocera Corp. (9th Cir.1997) 130 F.3d 884 [see discussion thereof in Crowell, supra, 95 Cal.App.4th at pp. 738-739, 115 Cal.Rptr.2d 810].) "[W]e conclude that Congress has explicitly prescribed a much narrower role for federal courts reviewing arbitral decisions. The [FAA] enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award. Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard. Because the Constitution reserves to Congress the power to determine the standards by which federal courts render decisions, and because Congress has specified the exclusive standard by which federal courts may review an arbitrator's decision, we hold that private parties may not contractually impose their own standard on the courts." (Kyocera, supra, 341 F.3d at p. 994.)
The Kyocera court continued: "[P]rivate parties have no power to determine the rules by which federal courts proceed, especially when Congress has explicitly prescribed those standards. Pursuant to Volt, parties have complete freedom to contractually modify the arbitration process by *199 designing whatever procedures and systems they think will best meet their needsincluding review by one or more appellate arbitration panels. Once a case reaches the federal courts, however, the private arbitration process is complete, and because Congress has specified standards for confirming an arbitration award, federal courts must act pursuant to those standards and no others. Private parties' freedom to fashion their own arbitration process has no bearing whatsoever on their inability to amend the statutorily prescribed standards governing federal court review." (Kyocera, supra, at p. 1000, italics added.)
The Seventh and Tenth Circuits have similarly held that private parties cannot contract for a different standard of judicial review. (See Chicago Typographical Union v. Chicago Sun-Times (7th Cir.1991) 935 F.2d 1501, 1504-1505; Bowen v. Amoco Pipeline Co. (10th Cir.2001) 254 F.3d 925, 933. See also UHC Management Co. v. Computer Sciences Corp. (8th Cir.1998) 148 F.3d 992, 998 [strongly suggesting that the FAA precludes parties from agreeing to an alternate standard of review, but resolving the matter on other grounds].)
In contrast, the First, Third, Fourth, and Fifth Circuits have held that the FAA does not preclude parties from agreeing to an expanded standard of judicial review. (See Puerto Rico Telephone v. U.S. Phone Mfg. (1st Cir.2005) 427 F.3d 21, 31; Roadway Package System, Inc. v. Kayser (3d Cir.2001) 257 F.3d 287, 293; Syncor Intern. Corp. v. McLeland (4th Cir. Aug.11, 1997) 120 F.3d 262 (Table) 1997 WL 452245 [unpublished]; Gateway Technologies v. MCI Telecommunications (5th Cir. 1995) 64 F.3d 993.)
Insofar as we need pronounce on the issue, we agree with the reasoning of the Ninth Circuit in Kyocera, supra, 341 F.3d 987. Nothing in the FAA purports to give private parties the power to expand by contract the statutorily conferred jurisdiction of courts to vacate arbitration awards. Just as the FAA does not compel federal courts to enforce attempts to contractually expand their limited power to review arbitral decisions, it also does not compel California courts to enforce attempts to contractually expand their power to review arbitral decisions conferred by the California Arbitration Act. Thus, we decide that we are not required by the FAA to enforce the arbitration agreement according to its terms, including the provision that allows for judicial review of legal error.
Accordingly, we conclude that the arbitration award before us was subject to the limited judicial review described by the Supreme Court in Moncharsh. As such, the merits of the controversy between the parties were not properly subject to judicial review. The trial court candidly stated that "[i]n determining whether to vacate the award," it was required to analyze "whether the arbitrators properly applied California law," and "whether the arbitrators made errors of law." However, the trial court was not authorized to review the validity of the arbitrators' reasoning for errors of fact or law, or to determine whether the evidence was sufficient to support the arbitrators' award. (Moncharsh, supra, 3 Cal.4th at p. 11, 10 Cal.Rptr.2d 183, 832 P.2d 899.) In deciding that the arbitrators misapplied California's substantive law regarding contract interpretation by inserting a new term into the sales agency agreement to permit classwide arbitration, the trial court categorically exceeded the reach of its authority. There is no dispute that deciding whether classwide arbitration was to be permitted was a matter within the scope of the controversy submitted to the arbitrators, and that the arbitrator's resolution of this issue is what the parties bargained for in the arbitration *200 agreement. The trial court could not properly find that the arbitrators exceeded their powers within the meaning of section 1286.2, subdivision (a)(4), by deciding the issue incorrectly. (Moncharsh, supra, 3 Cal.4th at p. 28, 10 Cal.Rptr.2d 183, 832 P.2d 899; Moshonov v. Walsh, supra, 22 Cal.4th at pp. 775-776, 94 Cal.Rptr.2d 597, 996 P.2d 699; Moore v. First Bank of San Luis Obispo, supra, 22 Cal.4th at p. 787, 94 Cal.Rptr.2d 603, 996 P.2d 706; Alexander v. Blue Cross of California, supra, 88 Cal.App.4th at p. 1089, 106 Cal.Rptr.2d 431.)

Disregard of an Express Provision in the Arbitration Agreement
DIRECTV contends that the trial court's order vacating the award nonetheless finds support in case law establishing that arbitrators exceed their powers within the meaning of section 1286.2 by disregarding express provisions of the arbitration agreement. For example, in O'Flaherty v. Belgum (2004) 115 Cal.App.4th 1044, 9 Cal.Rptr.3d 286, a dispute involving dissolution of a law partnership, the Court of Appeal reversed the trial court's judgment confirming an arbitration award, with directions to vacate the award, on the basis that the arbitrator had exceeded his powers by awarding a remedy that was forbidden by the parties' partnership agreement. The award directed the withdrawing partners to forfeit their capital accounts, despite the fact that the partnership agreement at issue expressly provided for a return of capital, even to a wrongfully withdrawing partner. In addition, the partnership agreement was governed by the Uniform Partnership Act (Corp.Code, § 16111), in which no provision is made for forfeiture of capital accounts.[11] (Id. at pp. 1057-1058, 9 Cal.Rptr.3d 286.)
Similarly, in California Faculty Assn. v. Superior Court (1998) 63 Cal.App.4th 935, 75 Cal.Rptr.2d 1, in reviewing a university president's decision not to grant tenure to a professor, the arbitrator's authority was limited by the parties' agreement to determining whether the president's decision was based on reasoned judgment or constituted an abuse of discretion. The arbitrator was not to undertake an independent evaluation of the professor's performance and scholarly achievements, but clearly did so in overturning the president's decision. (Id. at pp. 945-946, 950-952, 75 Cal. Rptr.2d 1.) The court found that the arbitrator exceeded the scope of his authority as expressly defined by the parties' agreement, and therefore affirmed the trial court's grant of the university's motion to vacate the award. (Id. at pp. 952-953, 75 Cal.Rptr.2d 1.)
Finally, in Bonshire v. Thompson (1997) 52 Cal.App.4th 803, 60 Cal.Rptr.2d 716, the underlying contract contained an arbitration clause and an integration clause that expressly barred the arbitrator from considering extrinsic evidence in interpreting the contract. (Bonshire v. Thompson, supra, 52 Cal.App.4th at pp. 806-808, 60 Cal.Rptr.2d 716.) One of the parties to the contract sought to reform it, and the arbitrator examined extrinsic evidence in framing the arbitration award. (Id. at pp. 806-808, 60 Cal.Rptr.2d 716.) The court concluded that the arbitrator had exceeded his powers, given the express prohibition on extrinsic evidence. (Id. at pp. 811-812, 60 Cal.Rptr.2d 716.)
*201 By contrast here, the arbitrators did not violate any similarly express provision in the sales agency agreement. DIRECTV contends that certain language in the agreement indicates that the parties contemplated only separate and individual arbitrations rather than classwide arbitration. That is vastly different from saying that the agreement expressly prohibits classwide arbitration. There simply is no provision in the parties' agreement that prohibits classwide arbitration. The cases cited above upon which DIRECTV relies are entirely distinguishable.

Erroneous Application of California Procedural Law
DIRECTV further contends that the arbitrators exceeded their powers by relying on Keating v. Superior Court, supra, 31 Cal.3d 584, 183 Cal.Rptr. 360, 645 P.2d 1192 (approving of classwide arbitration) and Blue Cross, supra, 67 Cal. App.4th 42, 78 Cal.Rptr.2d 779 (permitting arbitrators to order classwide arbitration in a case governed by Federal Arbitration Act where the parties' agreement is silent) because those cases establish only procedural law, and the arbitration agreement at issue directs the arbitrators to apply federal procedural law and California substantive law. We disagree with DIRECTV's characterization of Keating and Blue Cross as establishing only procedural law when they held classwide arbitration to be permissible.
"Substance and procedure are not static legal concepts. `[A] statute or other rule of law will be characterized as substantive or procedural according to the nature of the problem for which a characterization must be made.' (Grant v. McAuliffe (1953) 41 Cal.2d 859, 865 [264 P.2d 944].) `"As a general rule, laws which fix duties, establish rights and responsibilities among and for persons ... are `substantive laws' in character, while those which merely prescribe the manner in which such rights and responsibilities may be exercised and enforced in court are `procedural laws.'"' (Vienna v. California Horse Racing Bd. (1982) 133 Cal. App.3d 387, 394 [184 Cal.Rptr. 64], citing Black's Law Dict. (5th ed.) p. 1083, col. 2.)" (Berman v. RCA Auto Corp. (1986) 177 Cal.App.3d 321, 324, 222 Cal.Rptr. 877.)
Taken together, Keating and Blue Cross established that, under appropriate circumstances, parties to adhesion contracts enjoy the right to pursue redress of grievances by way of classwide arbitration. Their conclusions were based in large part on the fact that arbitration is highly favored, as well as the perception that gross unfairness would result in some cases from the denial of the opportunity to proceed on a classwide basis. (See Blue Cross, supra, at pp. 53-55, 78 Cal.Rptr.2d 779.) In this context, the right to pursue classwide arbitration cannot be said to constitute a mere procedural vehicle. Rather, it is more accurately described as constituting a substantive right.
In Discover Bank v. Superior Court, supra, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, the Supreme Court discussed the procedural and substantive elements of the doctrine of unconscionability, in the context of considering the enforceability of class action waivers in contracts of adhesion. The court's comments in that regard are instructive for our purposes here. It said: "Some courts have viewed class actions or arbitrations as a merely procedural right, the waiver of which is not unconscionable. (See, e.g., Strand v. U.S. Bank National Association ND (N.D. 2005) 693 N.W.2d 918, 926 (Strand); Blaz v. Belfer (5th Cir.2004) 368 F.3d 501, 504-505; Johnson v. West Suburban Bank (3d Cir.2000) 225 F.3d 366, 369; Champ v. Siegel Trading Co., Inc. (7th Cir.1995) 55 *202 F.3d 269, 277; but see Leonard v. Terminix Intern. Co. L.P. (Ala.2002) 854 So.2d 529, 538 [class action waiver together with limitation of damages clause in adhesive consumer arbitration agreement deprives plaintiffs of a "meaningful remedy" and is therefore unconscionable]; State v. Berger (W.Va.2002) 211 W.Va. 549 [567 S.E.2d 265, 278] [holding contract provision limiting class action rights unconscionable]; Powertel v. Bexley (Fla.Dist.Ct.App.1999) 743 So.2d 570, 576 [same].) But as the above cited cases of this court have continually affirmed,[12]class actions and arbitrations are, particularly in the consumer context, often inextricably linked to the vindication of substantive rights. Affixing the `procedural' label on such devices understates their importance and is not helpful in resolving the unconscionability issue." (Discover Bank v. Superior Court, supra, 36 Cal.4th at p. 161, 30 Cal.Rptr.3d 76, 113 P.3d 1100, italics added.)
We conclude that the trial court erred in ruling that the arbitrators exceeded their powers by relying on principles established in Keating and Blue Cross, as the holdings of these cases do indeed constitute substantive law, which the arbitrators were directed to follow. As such, even if the arbitration award were properly reviewable by the trial court and by this court for legal error, the trial court's ruling that the majority arbitrators erred in their application of California substantive law would require reversal. The law established in Blue Cross and Keating gives arbitrators discretion to order classwide arbitration even where the arbitration agreement is silent on that issue, in divergence from the general rules of contract interpretation that terms are not to be inserted into contracts.

Refusal to Admit Extrinsic Evidence
DIRECTV submitted to the arbitrators the declarations of several DIRECTV-compatible equipment retailers and of the person who drafted the sales agency agreement on behalf of DIRECTV, in an effort to support its argument that the parties did not intend to permit classwide arbitration when they entered into the arbitration agreement in the sales agency agreement. DIRECTV contends that the trial court properly vacated the arbitration award on the basis that the arbitrators failed to "consider relevant extrinsic evidence," i.e., the retailers' and drafter's declarations. Pursuant to section 1286.2, subdivision (a)(5), a trial court shall vacate an arbitration award if the court determines that "The rights of the party were substantially prejudiced ... by the refusal of the arbitrators to hear evidence material to the controversy." The trial court based its vacation of the award, in part, on this ground. We conclude that the trial court erred in so doing.
The record on appeal contains the following comments by one of the arbitrators: "The next issue to address was the request that the Panel was going to consider the declarations attached to respondent's brief that the declarants be required to let the panelthat declarants be physically present today. We've all read the brief and we have read the declarations, but our view is that it's essentially a question of law and construction interpretation of the contract itself. And so the declarations are not of significance.... But it is denied."
Thus, the request that was denied was that the panel allow the declarants to *203 be physically present.[13] The denial was not with regard to admitting the declarations. In addition, the statement by the arbitrator that "we have read the declarations," effectively ends our inquiry because it definitively demonstrates that the arbitrators did not "refus[e] ... to hear evidence material to the controversy." (§ 1286.2, subd. (a)(5).)
The court in Gonzales v. Interinsurance Exchange (1978) 84 Cal.App.3d 58, 148 Cal.Rptr. 282 concluded that alleging a failure to consider evidence is not tantamount to alleging a refusal to hear evidence, and failure to allege a refusal to hear evidence renders fatally defective a petition to vacate brought pursuant to section 1286.2, subdivision (a)(5). "Webster defines the words consider and hear to leave no other conclusion. Hear is `To perceive by the auditory sense; to take cognizance of by ear; to give audience or allowance to speak; to listen to....' Consider is `to view attentively ... to fix the mind on, with a view to careful examination; to think on with care; to ponder; to study; to meditate on; ...' It is obvious from these definitions that the two words are not synonymous. One cannot `consider' what one has refused to `hear.' Legally speaking the admission of evidence is to hear it, and the weighing of it is to give it consideration. The failure to allege a refusal to hear evidence renders this petition fatally defective in this respect, since failure to consider evidence is not a ground to vacate the award." (Id. at p. 63, 148 Cal. Rptr. 282; see also 6 Cal. Jur.3d Arbitration and Award, § 144, database updated May 2006.)
The record on appeal makes clear that the arbitrators did not "refus[e] ... to hear evidence material to the controversy." (§ 1286.2, subd. (a)(5), italics added.) Vacation of the award on this basis was not warranted.
In any event, the declarations at issue were not relevant. They merely offered the subjective opinions of a few dealers and the drafter of the arbitration agreement for DIRECTV regarding their undisclosed understanding and intention that the arbitration provision would not permit classwide arbitration, without relating any objective facts surrounding the negotiations over the provision that would demonstrate that the matter was considered or discussed.
"Although the intent of the parties determines the meaning of the contract (Civ.Code, §§ 1636, 1638), the relevant intent is `objective'that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent. (Beck v. American Health Group Internat., Inc. (1989) 211 Cal.App.3d 1555 [1562, 260 Cal.Rptr. 237].) ... The true intent of a contracting party is irrelevant if it remains unexpressed. (211 Cal.App.3d 1555, 1562 [260 Cal.Rptr. 237]; see also City of Mill Valley v. Transamerica Ins. Co. (1979) 98 Cal.App.3d 595, 603 [159 Cal. Rptr. 635].)" (Shaw v. Regents of University of California (1997) 58 Cal.App.4th 44, 54-55, 67 Cal.Rptr.2d 850. See also Titan Group, Inc. v. Sonoma Valley County Sanitation Dist. (1985) 164 Cal.App.3d 1122, 1127, 211 Cal.Rptr. 62: ["It is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation. `[I]t is now a settled principle of the law of contract that the undisclosed intentions of the parties are ... immaterial; and that the outward manifestation *204 or expression of assent is controlling.' (Brant v. California Dairies, Inc. (1935) 4 Cal.2d 128, 133 [48 P.2d 13].)"] Cf. Hess v. Ford Motor Co. (2002) 27 Cal.4th 516, 528, 117 Cal.Rptr.2d 220, 41 P.3d 46 ["Because the testimony of the contracting parties described their disclosed intentions, it was undoubtedly relevant. As such, we do not address the issue whether undisclosed intentions are admissible `to assist the trier of fact in understanding the surrounding circumstances and negotiations....' (Neverkovec [v. Fredericks (1999)] 74 Cal.App.4th [337] at p. 351, fn. 9 [87 Cal.Rptr.2d 856].)"].) As such, we further conclude that the arbitrators did not "refus[e] ... to hear evidence material to the controversy." (§ 1286.2, subd. (a)(5), italics added.)

Severability
The parties did not initially address in their briefs on appeal what the effect should be were we to conclude, as we have, that the trial court exceeded its authority by examining the legal merits of the arbitrators' award. We therefore requested supplemental briefing from the parties to address the following issue: If this court determines to be invalid and unenforceable the provision in the parties' arbitration agreement that "the award may be vacated or corrected on appeal to a court of competent jurisdiction for any [errors of law or legal reasoning]," can that provision be severed from the arbitration agreement?
The alternatives would be to sever the invalid provision, to find the entire arbitration agreement to be void, or to remand the matter for the purpose of holding an evidentiary hearing on the issue. Having considered the applicable law and the supplemental briefing, in which DIRECTV argues against severability and the dealers argue in favor thereof, we conclude that the invalid provision can and should be severed from the arbitration agreement.
In Crowell, supra, 95 Cal.App.4th at page 740, 115 Cal.Rptr.2d 810, the appellate court concluded that "[t]he provision for judicial review of the merits of the arbitration award was so central to the arbitration agreement that it could not be severed. To do so would be to create an entirely new agreement to which neither party agreed." Accordingly, the Crowell court concluded that the plaintiff could not amend his complaint for declaratory relief to sever the unenforceable provisions of the arbitration agreement, with the effect that the entire arbitration agreement was determined to be null and void.
The court in CC Partners, supra, 101 Cal.App.4th 635, 124 Cal.Rptr.2d 363, also found invalid a provision in an arbitration agreement that attempted to permit judicial review of legal errors, but diverged from the Crowell court with regard to the severability of the invalid provision. The court's analysis is instructive, and we therefore quote from it at some length: "We agree with the primary holding in Crowell. We do not have the power to review de novo any questions of law decided by the arbitrator. That does not mean, however, that we necessarily follow Crowell and find the parties' arbitration agreement void and unenforceable.
"The Crowell court was not reviewing a judgment confirming an arbitration award. It was reviewing the sustaining of a demurrer to a complaint, filed prior to arbitration, seeking declaratory relief. Here, the arbitration has been completed and the Authority is seeking to confirm the arbitration award. An improper attempt to expand the scope of judicial review is not among the statutory grounds for vacating an arbitration award. (See Code Civ. Proc., § 1286.2.)
*205 "The Crowell court also did not have to consider a severance clause.[14] Here, in contrast, the License Agreement contains a broad severance clause: `If any provision of this License Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this License Agreement and the application of such provision to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.'
"The unmistakable intent of this language is that all provisions of the License Agreement, including the arbitration agreement, are to be enforced except to the extent they are invalid. CC Partners, however, suggests that we remand this matter to the trial court for an evidentiary hearing on severability. We decline to do so.
"First, we see no ambiguity in the language of the severance clause. It plainly provides that the remainder of the parties' agreement will not be affected by any invalid provisions. Though California law permits the use of extrinsic evidence to explain the meaning of a written instrument (Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co. (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641]), CC Partners fails to point to any ambiguity in the severance clause and it does not suggest how the language could have a different meaning. It has made no offer of proof as to what evidence it would introduce to reveal an ambiguity or suggest a different meaning.
"Second, the principles of equity underlie the enforcement of arbitration agreements. (Saika v. Gold [(1996)] 49 Cal. App.4th [1074] at p. 1081 [56 Cal.Rptr.2d 922].) Equity also informs the decision as to whether to sever an illegal term of a contract. In Armendariz v. Foundation Health Psychcare Services, Inc. [(2000)] 24 Cal.4th [83] at page 123 [99 Cal.Rptr.2d 745, 6 P.3d 669], the California Supreme Court set forth two reasons for severing illegal terms rather than voiding an entire contract: `The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreementparticularly when there has been full or partial performance of the contract. [Citations.] Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [Citations.] The overarching inquiry is whether "`the interests of justice ... would be furthered'" by severance.' (Id. at pp. 123-124 [99 Cal.Rptr.2d 745, 6 P.3d 669]; see Beynon v. Garden Grove Medical Group (1980) 100 Cal.App.3d 698, 713-714 [161 Cal.Rptr. 146] [provision in arbitration agreement void as against public policy severed from agreement and arbitration award confirmed]; Saika v. Gold, supra, 49 Cal.App.4th at pp. 1081-1082 [56 Cal. Rptr.2d 922] [provision in arbitration agreement contravenes public policy and will not be enforced; case remanded with directions to confirm arbitration award].)" (CC Partners, supra, 101 Cal.App.4th at pp. 645-647, 124 Cal.Rptr.2d 363.)
The court in CC Partners concluded that it would sever the unenforceable provision, and confirm the arbitration award. Failing to do so would result in CC Partners' gaining an undeserved benefit, would ignore the parties' intent that the remainder *206 of their agreement remain unaffected by the invalidity of any particular provision, and would ill serve the interest of justice and the policy of this state to encourage arbitration of disputes. (Id. at p. 647, 124 Cal.Rptr.2d 363.)
Similarly, in Kyocera, supra, 341 F.3d 987, the Court of Appeals, applying California state law, considered whether the invalidity of the provision regarding an expanded standard of review rendered the entire arbitration clause unenforceable, and concluded that it did not. (Id. at pp. 1000-1002.) One of the parties asserted that the potential for expansive appellate review was critical to the entire agreement, making the unenforceable and the enforceable contractual provisions integrated and interdependent, such that the offending provision could not be severed. (Id. at pp. 1001-1002.) However, the party arguing against severability cited no evidence in support of that assertion. (Id. at p. 1002.) Relying on Little v. Auto Stiegler, Inc., supra, 29 Cal.4th 1064, 130 Cal. Rptr.2d 892, 63 P.3d 979, in which the California Supreme Court severed a term providing for arbitral review of an arbitration award, the court in Kyocera concluded that "surely the external scope of judicial review is not sufficiently central to the arbitration clause to defeat severability." (Ibid.)
The arbitration agreement at issue here contains a severance clause, section 18.9, regarding "invalid or unenforceable provisions." It states in relevant part: "If any provision of this Agreement is determined to be invalid or unenforceable, the provision shall be deemed severed from the remainder, which shall remain enforceable."
This language is unambiguous. The parties plainly expressed the intention that the remainder of their agreement would not be affected by any invalid provisions. DIRECTV has not cited to any evidence in support of the assertion that appellate review was critical to the entire agreement, merely asserting that "no rational corporate defendant would agree" to such an arbitration process.[15] In addition, we find that the interests of justice would not be served by invalidating the entire arbitration agreement. Doing so would ignore the parties' intent that the remainder of their agreement remain unaffected by the invalidity of any particular provision, and would ill serve the interests of justice and the policy of this state, and of the FAA, to encourage arbitration of disputes. (See Titan Group, Inc. v. Sonoma Valley Sanitation Dist., supra, 164 Cal.App.3d at p. 1127, 211 Cal.Rptr. 62 [we are guided by the rule that, contractual arbitration being a favored method of resolving disputes, every intendment will be indulged to give effect to such proceedings].)
Accordingly, we sever the provision from the arbitration agreement that "the award may be vacated or corrected on appeal to a court of competent jurisdiction *207 for any such error." The remainder of the agreement shall remain extant.

DISPOSITION
The order vacating the arbitration award is reversed, and the trial court is directed to enter a new order confirming the award. Appellants are to recover their costs on appeal.
We concur: MANELLA and SUZUKAWA, JJ.
NOTES
[1] For purposes of this discussion, we refer to the sales agency agreement as the applicable contract.
[2] The majority also noted that the award was "issued pursuant to" American Arbitration Association Rule 3 of the Supplementary Rules for Class arbitration, and Green Tree Financial Corp. v. Bazzle (2003) 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414.
[3] The majority further noted: "The determination of whether this action is maintainable as a class arbitration will be the subject of a further hearing to determine if the prerequisites to a class arbitration as set forth in rule 4 of the Association's Supplementary Rules of Class arbitration are met."
[4] "An arbitrator may utilize multiple, incremental, or successive award process as a means, in an appropriate case, of finally deciding all submitted issues." (3 Oehmke, Commercial Arbitration (3d ed.2004) § 122:1.) "An interim award can be confirmed by the court and enforced judicially, just as a final arbitral award." (Ibid.) "As a general rule, partial or interim awards are confirmable when they resolve with finality a severable issue in arbitration according to terms of the contract." (Id. at § 122:4.)
[5] All undesignated section references are to the Code of Civil Procedure.
[6] DIRECTV also argues that the arbitrators exceeded their powers by relying on the AAA supplementary rules for class arbitrations in rendering their decision, when those rules indicate that in construing the applicable arbitration clause, the arbitrators are not to consider the supplementary rules to be a factor in favor of or against permitting classwide arbitration. Whether the arbitrators did in fact consider the supplementary rules in favor of permitting classwide arbitration, such an inquiry into purported legal error on the part of the arbitrators is not subject to judicial review.
[7] We disagree with the suggestion made by the court in Baize v. Eastridge Companies, supra, 142 Cal.App.4th 293, footnote 5, 47 Cal.Rptr.3d 763, that the holding in Crowell appears to challenge the assumption made by the Supreme Court in Moncharsh and also Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at page 375, 36 Cal.Rptr.2d 581, 885 P.2d 994, that parties could, in their arbitration agreement, set restrictions on the scope of the arbitrator's powers, and that the powers of an arbitrator are derived from the agreement to arbitrate. As we understand Moncharsh, the parties to an arbitration agreement may agree to alter the scope of the arbitrator's powers, but judicial review may not be expanded beyond the statutory grounds set forth by the Legislature. We do not understand the opinion in Crowell to be "rais[ing] a basis for a reconsideration of the rule of Moncharsh." (Ibid.) In any event, the Baize court's comments about Crowell in this regard constituted dicta. As the Baize court noted, "We have no need to express an opinion on the viability of the majority's conclusion in Crowell because it involved a contractual provision different that that before us." (Ibid.)
[8] Section 1296 provides: "The parties to a construction contract with a public agency may expressly agree in writing that in any arbitration to resolve a dispute relating to the contract, the arbitrator's award shall be supported by law and substantial evidence. If the agreement so provides, a court shall, subject to Section 1286.4, vacate the award if after review of the award it determines either that the award is not supported by substantial evidence or that it is based on an error of law."
[9] DIRECTV notes that the AAA Supplementary Rules for Class Arbitrations "provide for review by a court of competent jurisdiction at several stages during the process of determining whether a contract permits class arbitration procedures, whether a class can and should be certified, and whether a certified class is entitled to judgment in its favor." DIRECTV contends that "[t]he AAA appears to be basing its process on the assumption that such review would ensure that class-related decisions are made properly by arbitrators. But an application of Crowell here would eliminate such appellate review, and would thus disallow the applicable AAA procedures." We disagree with the initial premise that the AAA rules for class arbitration contemplate judicial review that is different in kind or scope from the review ordinarily applicable to arbitral decisions. We express no intention or purpose to disallow these AAA rules.
[10] Specifically, the agreement stated: "`The decision of the arbitrator shall be final and binding upon the parties without appeal or review except as permitted by California law, ... provided, however, that either party may file an application to correct or vacate the arbitration award or an application for de novo review on all questions of law based on the arbitrator's finding of fact (which are deemed for such purpose to be stipulated by the parties), in either case under California Code of Civil Procedure Section 1285 et seq.'" (Italics added.) (CC Partners, supra, 101 Cal.App.4th at p. 645, fn. 3, 124 Cal. Rptr.2d 363.)

Likewise, in Crowell the arbitration agreement stated that "`upon the petition of any party to the arbitration, a court shall have the authority to review the transcript of the arbitration proceedings and the arbitrator's award and shall have the authority to vacate the arbitrator's award, in whole or in part, on the basis that the award is not supported by substantial evidence or is based upon an error of law.'" (Crowell, supra, at pp. 732-733, 115 Cal.Rptr.2d 810.)
DIRECTV attempts to draw a distinction between the language in the agreements in Crowell and CC Partners and that in the arbitration agreement before us on the basis that the arbitration provisions in the former cases "did not contain language defining the powers of arbitrators to restrict them from committing errors of law or legal reasoning." We conclude that this is a distinction without a difference because the contract language in both Crowell and CC Partners implicitly but definitively presupposes that the arbitrators would be expected to follow rules of law, given that in each case the arbitration award was subject to de novo review on all questions of law.
[11] The appellate court also reversed the judgment based on the conclusion that the arbitrator exceeded his powers by adjudicating claims involving the partnership rather than the individual partners, where a receiver had been appointed for the partnership, and thus, only the receivership court had jurisdiction to determine all issues relating to the receivership. (Id. at pp. 1061-1063, 9 Cal.Rptr.3d 286.)
[12] See Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 130 Cal.Rptr.2d 892, 63 P.3d 979; Graham v. Scissor-Tail, Inc. (1981) 28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165; and Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 97 Cal.Rptr.2d 179, 2 P.3d 27.
[13] This characterization of the request is confirmed by counsel's response to the arbitrator's statement, which was to seek clarification of the panel's authority to compel attendance of witnesses.
[14] In a footnote inserted at this point, the CC Partners court noted: "At the request of the Authority, we have taken judicial notice of the pleadings in Crowell, which incorporated the parties' agreement. That agreement contains no severance provision." (CC Partners, supra, 101 Cal.App.4th at p. 646, fn. 4, 124 Cal. Rptr.2d 363.)
[15] DIRECTV contends that severance of only the expanded judicial review provision would not be legally viable, as that provision "is only a portion of a larger idea and purpose of the arbitration agreement, which is to limit the powers of the arbitrators to make errors of law or legal reasoning and to preserve a mechanism to enforce this limit." It continues: "The parties would, on the surface, retain their agreed-upon arbitration free from legal errors, but would lose any means to enforce the limitation they placed on the arbitrators." We conclude, however, that the remaining language is not rendered meaningless in the absence of a mechanism for its enforcement. The provision requiring the arbitrators to follow the law differentiates the arbitrators' instructions from those arbitration agreements in which the parties contemplate that the arbitrators will do justice but not be bound by the strict confines of the law.